UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

ADT LLC,

    Plaintiff,

        v.                                        Case No. 9:12cv80898

ALARM PROTECTION TECHNOLOGY
FLORIDA, LLC, and JACOB DAHL,

    Defendants.
_____/

**COMPLAINT**

    Plaintiff ADT LLC ("ADT"), through its undersigned counsel, brings this action for damages and injunctive relief against Defendants Jacob Dahl ("Dahl") and Alarm Protection Technology Florida, LLC ("APT"), and in support alleges:

**SUMMARY OF THE CASE**

    1.    This is an action for damages, attorney fees and injunctive relief arising from the defendants' deceptive trade practices.  APT, through Dahl and others, is interfering with ADT's contracts with its South Florida customers by misleading customers into believing that it is ADT, by falsely stating that their ADT alarm systems are outdated and require "upgrading," and by inducing them to install APT systems and sign APT contracts as part of the "upgrade."  These deceptive practices violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.*, as well as ADT's rights against interference with its contracts under the Florida common law.

## PARTIES

2. Plaintiff ADT is a Delaware limited liability company with its principal place of business at 1501 Yamato Road, Boca Raton, Florida 33431.

3. Defendant APT is a Florida limited liability company with its principal place of business at 189 N. Highway 89, Suite C-12, North Salt Lake, Utah 84054. APT maintains an office and conducts business in Palm Beach County at 1200 NW 17th Avenue, Suite 5, Delray Beach, Florida 33445.  APT's registered agent for service of process in Florida is Registered Agent Solutions, Inc., 155 Office Plaza Drive, Suite A, Tallahassee, Florida 32301.

4. Defendant Dahl is Regional Sales Manager for APT, and maintains an office for APT as well as for nonparty Same Day Enterprises, Inc., at 1200 NW 17th Avenue, Suite 5, Delray Beach, Florida 33445.  On information and belief, Dahl resides in Boca Raton, Florida, at an unknown address.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to section 1331 of title 28 because it presents a Federal question under Section 43(a) of the Lanham Act.

6. This Court has supplemental jurisdiction over the state-law claims also asserted in this action pursuant to section 1367(a) of title 28.

7. Venue lies in this District pursuant to section 1391(b) of title 28 because defendants reside and are found in this District, and because a substantial number of the events giving rise to the claims asserted in this Complaint occurred in this District.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

8. ADT is the largest and best-known provider of electronic security services and equipment for homes and businesses in the United States.

9. ADT provides security services and equipment nation-wide and is engaged in interstate commerce for the purposes of the Lanham Act.

10. Defendant APT is a Florida subsidiary of Alarm Protection Technology, a Utah-based competitor of ADT in the security systems industry, that operates in a number of states across the country. APT, though organized under the laws of Florida, maintains its principal place of business in Utah. APT's marketing efforts in Florida constitute interstate commerce under the Lanham Act.

11. Defendant Dahl currently works as a Florida "regional sales manager" of APT, with an office in Delray Beach. Before working at APT, Dahl worked as a sales manager at APX Alarm Security Solutions, Inc. ("APX"), another ADT competitor that operated in New York.

12. Defendants are engaging in a campaign to increase APT's Florida market share at ADT's expense. On information and belief, defendants target ADT customers by seeking houses with the distinctive ADT sign that ADT's customers post on their premises to deter burglars.

13. Defendants solicit those ADT customers by engaging in deceptive trade practices that are intended to mislead (and are misleading) ADT's customers into believing that defendants represent ADT. As a result, defendants are inducing ADT customers to sign APT contracts and install APT systems under the guise of "upgrading" their ADT service.

14. Defendants' deceptive practices are injuring ADT by causing ADT's customers to uninstall their ADT equipment, install APT equipment, terminate their ADT contracts, and execute new contracts for security services with APT.

15. As part of its business, ADT has developed confidential information regarding the identities and security system specifications of each of its customers. This information is highly valuable within the industry, is not generally known or attainable by others, and is frequently the subject of expensive purchase agreements between competing security systems providers. Defendants' collection of confidential ADT customer data while posing as ADT representatives amounts to a theft of ADT's trade secrets.

16. Defendants, by falsely representing to ADT customers that their ADT security systems are outdated and vulnerable to burglars, or are in need of "upgrades," damage ADT's goodwill and reputation as a reliable provider of security services.

17. As a result of defendants' practices, a number of ADT customers have unwittingly found themselves with APT systems installed in their premises, and with contractual obligations to both APT and ADT. In many instances, ADT has been required to send technicians to the deceived customers' houses to reinstall the removed ADT equipment, at considerable expense to ADT. In others, the customers retained their APT systems, and terminated their ADT contracts.

18. Such practices, as alleged in greater detail below, violate statutory and common-law prohibitions against the use of false and deceptive statements in commerce. They also violate the security systems industry's own Code of Ethics and Standards of Conduct, which requires that companies "truthfully and clearly identify themselves by

name … at the initiation of a sales presentation, without request from the consumer," and which prohibits as common deceptive sales practices, *inter alia*, (a) any claim that a competitor is going out of business, (b) any claim that the company is taking over the competitor's accounts, or (c) any offer of an "update" or "upgrade" of an existing system that requires the execution of a contract with a new security services provider.

19. ADT has received a number of calls from its South Florida customers reporting visits from Dahl and other APT representatives, and expressing confusion as to whether they are affiliated with ADT. ADT offers the following examples to illustrate defendants' deceptive and tortious acts.

### Mona Gartrell

20. On February 18, 2012, Dahl visited the home of ADT customer Mona Gartrell, in West Palm Beach.

21. Dahl falsely stated that he represented ADT. Dahl falsely stated that ADT was going out of business in South Florida, and that he would be servicing ADT's customers.

22. Dahl falsely claimed to have knowledge of the installation and features of Ms. Gartrell's ADT alarm system.

23. Dahl falsely stated that Ms. Gartrell's alarm system required an upgrade because her neighborhood had experienced burglaries that her existing equipment could not reliably prevent.

24. Dahl falsely claimed that Ms. Gartrell's ADT system was not "top-notch" and could be defeated by cutting telephone wires to the system. In fact, Ms. Gartrell's system employs wireless technology to protect against cut telephone wires.

25. Dahl wore a shirt with an APT insignia, which resembles ADT's and is intended to confuse ADT customers. Dahl did not disclose that APT is not related to ADT, or that ADT and APT are competitors.

## Mary Demps

26. On May 4, 2012, Dahl visited the home of ADT customer Mary Demps, in Miami.

27. Dahl falsely claimed to represent ADT, and falsely stated that ADT uses APT equipment.

28. Dahl falsely stated that ADT was "upgrading" Ms. Demps's alarm system because her neighborhood had "a lot of break ins" that required new alarm systems.

29. Dahl falsely stated that ADT would upgrade Ms. Demps's ADT alarm system for free in exchange for executing a new contract. Ms. Demps agreed.

30. Fifteen minutes later, APT technician Michael Helton arrived, removed all of ADT's monitoring equipment installed at Ms. Demps's premises, and replaced it with APT equipment, representing it as an "upgraded system."

31. Neither Dahl nor Helton disclosed to Ms. Demps that they worked for APT, not ADT; that APT is not related to ADT; that, to the contrary, APT and ADT are competitors; or that the new contract Ms. Demps signed in consideration for the "upgrade" was duplicative of Ms. Demps's existing security services contract with ADT.

32. Such misconduct misled Ms. Demps to believe that she was acquiring an ADT upgrade, not contracting for new service from an ADT competitor.

## Marilyn Hipple

33. In May 2012, Dahl visited the home of ADT customer Marilyn Hipple, in Vero Beach.

34. Dahl falsely claimed to represent ADT.

35. Dahl falsely stated that recent burglaries in Ms. Hipple's neighborhood required the installation of new alarm equipment.

36. Dahl falsely stated that ADT would provide a free "upgrade" to Ms. Hipple's alarm system to protect against these burglaries.

37. Ms. Hipple agreed. Dahl had Ms. Hipple sign some "paperwork" for the "upgrade," then brought APT technicians into the house and had them replace Ms. Hipple's ADT equipment with APT equipment.

38. The installers posted a yard sign in front of Ms. Hipple's house stating that the premises were protected by APT. When Ms. Hipple asked about the sign, the installers falsely stated that they were ADT sales representatives.

39. Upon reading the "paperwork," Ms. Hipple realized that she had signed a five-year contract for alarm services with APT.

40. Neither Dahl nor the installers ever disclosed to Ms. Hipple that they worked for APT, not ADT; that APT is not related to ADT; that, to the contrary, APT and ADT are competitors; or that the new contract Ms. Hipple signed in consideration for the "upgrade" was duplicative of Ms. Hipple's existing security services contract with ADT.

41. Such misconduct misled Ms. Hipple to believe that she was acquiring an ADT upgrade, not contracting for new service from an ADT competitor.

7

**Nieves Nunes**

42. On May 30, 2012, an unnamed APT representative visited the home of ADT customer Nieves Nunes, in Homestead, Florida.

43. The representative falsely stated that he was an ADT representative.

44. The representative falsely stated that Ms. Nunes's ADT security system required an update.

45. The representative falsely stated that there had been many burglaries in the neighborhood, and that unupdated ADT security systems were unreliable and "easy to break into."

46. The representative falsely stated that the upgrade would be free because Ms. Nunes was "already a customer."

47. The representative provided Ms. Nunes with a contract to sign, and her daughter signed it in her behalf.

48. Later that day, an APT technician visited Ms. Nunes's house, removed her ADT equipment, and installed APT equipment in its place.

49. Neither APT representative disclosed to Ms. Nunes that they worked for APT, not ADT; that APT is not related to ADT; that, to the contrary, APT and ADT are competitors; or that the new contract Ms. Nunes signed in consideration for the "upgrade" was duplicative of Ms. Nunes's existing security services contract with ADT.

50. Such misconduct misled Ms. Nunes to believe that she was acquiring an ADT upgrade, not contracting for new service from an ADT competitor.

### Robert Wimberly

51.     On June 13, 2012, APT representative Mike Moncur visited the home of ADT customer Robert Wimberly, in Miami, Florida.

52.     Mr. Moncur stated he worked for APT.  However, Mr. Moncur falsely stated that he was there to "upgrade" Mr. Wimberly's ADT security system.

53.     Mr. Moncur falsely stated threats of recent burglaries, and that the "upgrade" was needed to protect against them.

54.     Mr. Wimberly agreed to an upgrade of his ADT system. Mr. Moncur left and an APT technician arrived.  The technician removed Mr. Wimberly's ADT equipment and installed APT equipment in its place.

55.     Neither APT representative disclosed to Mr. Wimberly that APT is not related to ADT, or that, to the contrary, APT and ADT are competitors.

56.     Such misconduct misled Mr. Wimberly to believe that he was acquiring an ADT upgrade, not contracting for new service from an ADT competitor.

### Hilda Gillet

57.     On August 11, 2012, an unnamed APT representative visited the home of ADT customer Hilda Gillet, in Miami.

58.     The APT representative claimed to be visiting from "the alarm company," a statement intended to confuse Ms. Gillet as to the representative's identity.

59.     When Ms. Gillet asked if he represented ADT, the APT representative falsely stated there is "no more ADT," that the company had changed its name to APT.

60.     The APT representative falsely stated that Ms. Gillet's ADT system required an "update" to protect against burglaries.

61.     Based on the false statements, Ms. Gillet believed the representative to be from ADT, and allowed him into her home. The representative sold Ms. Gillet a new APT security system.

62.     Later that day, an APT technician visited Ms. Gillet's home, removed the ADT system, and installed the new APT system in its place.

63.     Neither APT representative disclosed to Ms. Gillet that APT is not related to ADT, or that, to the contrary, APT and ADT are competitors.

64.     Ms. Gillet did not understand that she had signed a contract with a different company until she received her monthly ADT bill as well as an APT bill. Although deceived by APT, Ms. Gillet has chosen to remain an APT customer.

## Mary Trovato

65.     Dahl is no newcomer to the use of deceptive practices to market services to ADT's customers. Dahl has used the same deceptions to market the security systems of ADT's competitor APX to ADT customers outside Florida.

66.     For example, Dahl, then an employee of APX, on May 14, 2010, visited the home of ADT customer Mary Trovato, in Rochester, New York.

67.     Ms. Trovato does not speak or read English fluently, and asked Dahl to telephone her daughter, Connie Tascione.

68.     On the telephone, while in Ms. Trovato's home, Dahl falsely told Ms. Tascione that he was from ADT.

69.     Dahl falsely told Ms. Tascione that Ms. Trovato's ADT system was "too old" and required an "upgrade."

70. Dahl falsely told Ms. Tasccione that he would perform a free "upgrade" to Ms. Trovato's ADT security system, and that Ms. Trovato would need to sign "paperwork" for her "upgrade."

71. Based on these falsehoods, Ms. Tascione advised her mother to sign the papers. Ms. Trovato did so.

72. The following day, an APX technician removed the ADT equipment from Ms. Trovato's home and replaced it with APX equipment.

73. Upon receiving calls from ADT to report system failures, Ms. Tascione visited her mother, reviewed the "paperwork," and learned that Dahl had induced her mother to sign a new contract for security services with APX, not ADT.

74. Dahl never disclosed to Ms. Tascione or Ms. Trovato that he worked for APX, not ADT; that APX was not related to ADT; or that, to the contrary, APX and ADT were competitors.

## COUNT I
## UNFAIR COMPETITION IN VIOLATION
## OF THE LANHAM ACT, 15 U.S.C. § 1125(a)(1)

75. Plaintiff incorporates Paragraphs 1 through 74, as if set forth fully here.

76. Defendants have attempted to sell APT's goods and services by making false and deceptive representations to ADT's customers.

77. Defendants have falsely stated to ADT's customers that ADT is going out of business in South Florida.

78. Defendants have falsely stated to ADT's customers that their ADT security systems are outdated and unsafe, and incapable of protecting ADT's customers from burglaries without "upgrades."

11

79. Dahl and APT's other agents have falsely identified themselves to ADT's customers as representing ADT, or as being related to ADT.

80. Defendants have offered to ADT's customers free "upgrades" to their ADT security systems without disclosing that they are competitors of ADT seeking to replace ADT's equipment and services, not upgrade them.

81. These statements are literally false.

82. Defendants have made each of the false statements with the intent of deceiving ADT's customers as to the relationship or affiliation of APT with ADT.

83. Defendants' false and misleading statements have created confusion among consumers, and will continue to do so if permitted to continue.

84. ADT has been and will continue to be damaged as a result of Defendants' false statements, by the disruption of ADTs relationship with its customers, by the diversion of ADT's customers to defendants, by loss of confidential information relating to ADT's customers, and by damage to ADT's goodwill and reputation as a reliable provider of security services.

85. ADT is entitled to an injunction pursuant to 15 U.S.C. § 1116(a) barring defendants from further violations of 15 U.S.C. § 1125(a).

86. ADT is entitled to an award of trebled compensatory damages, as well as defendants' profits, and attorney fees and the costs of this action pursuant to 15 U.S.C. § 1117(a).

WHEREFORE, ADT respectfully requests that the Court enter judgment in its favor and against Defendants, and award the following relief:

  a. An order pursuant to 15 U.S.C. § 1116(a) preliminarily, and permanently thereafter, restraining and enjoining defendants, and their agents, servants, employees, officers, attorneys, successors and assigns, from

  (1) making any false or misleading statement, or a statement that is likely to or intended to confuse an ADT customer or potential customer, regarding any relationship between ADT and APT, Dahl, or APT's other agents; or

  (2) making any false or misleading statement, or a statement that is likely to or intended to confuse an ADT customer or potential customer, regarding the function, performance, capabilities, specification, features, requirements, reliability, availability, origin, sponsorship, approval, or design of any ADT equipment, security systems, or services, or to misrepresent to any ADT customer that such customer's ADT security system is outdated or deficient; or

  (3) making any false of misleading statement, or a statement that is likely to or intended to confuse an ADT customer or potential customer into believing that ADT is no longer doing business or has curtailed its services.

  b. An accounting of defendants' profits resulting from their deceptive practices, and payment of such profits to ADT;

  c. Compensatory damages, trebled, as provided by 15 U.S.C. § 1117(a), in an amount to be established at trial;

    d.  Attorney fees and costs incurred in the prosecution of this action, as provided by 15 U.S.C. § 1117(a); and

    e.  Such other and further relief as the Court may deem appropriate in the circumstances.

**COUNT II**
**VIOLATION OF THE FLORIDA DECEPTIVE & UNFAIR**
**TRADE PRACTICES ACT, FLA. STAT. §§ 501.201 ET SEQ.**

87. Plaintiff incorporates Paragraphs 1 through 74, as if set forth fully here.

88. Defendants, by selling APT security systems and services, are engaged in "trade or commerce" as defined in Section 501.203(8) of the Florida Statutes.

89. Defendants have intentionally engaged in deceptive and unfair trade practices in violation of Section 501.204(1) of the Florida Statutes by falsely representing to ADT's customers that their ADT security systems are outdated and unsafe; that ADT's security systems are incapable of protecting ADT's customers from burglaries without "upgrades"; that Dahl and APT's other agents are from ADT, or are affiliated with ADT; and that they will provide free "upgrades" to their ADT security systems without disclosing that they are competitors of ADT, seeking to replace ADT's equipment and services, not upgrade them.

90. These practices are commonly recognized by industry members as deceptive and unfair trade practices that are intended to confuse and mislead consumers, and that have specifically been barred as such by the industry's code of ethics.

91. Defendants' misrepresentations were likely to, and did, mislead ADT's customers into believing that they were continuing and "upgrading" their ADT security services.

14

92. ADT is entitled to injunctive relief pursuant to Section 501.211(1), Florida Statutes, as one aggrieved by defendants' violation of the Act.  Given Dahl's history at APX of selling security services to ADT's customers through these same deceptive practices, defendants are likely to continue to engage in such practices unless they are enjoined by this Court from further violations.

93. ADT has been aggrieved by defendants' violations of the Act, and is entitled to its actual damages suffered as a result of those violations, plus its attorney fees and court costs as provided in Section 501.211(2) of the Florida Statutes.

WHEREFORE, ADT respectfully requests that the Court enter judgment in its favor and against Defendants, and award the following relief:

    a. An order pursuant to Fla. Stat. § 501.211(1) preliminarily, and permanently thereafter, restraining and enjoining defendants, and their agents, servants, employees, officers, attorneys, successors and assigns, from

    (1) making any false or misleading statement, or a statement that is likely to or intended to confuse an ADT customer or potential customer, regarding any relationship between ADT and APT, Dahl, or APT's other agents; or

    (2) making any false or misleading statement, or a statement that is likely to or intended to confuse an ADT customer or potential customer, regarding the function, performance, capabilities, specification, features, requirements, reliability, availability, origin, sponsorship, approval, or design of any ADT equipment, security systems, or services, or to

15

misrepresent to any ADT customer that such customer's ADT security system is outdated or deficient; or

(3) making any false of misleading statement, or a statement that is likely to or intended to confuse an ADT customer or potential customer into believing that ADT is no longer doing business or has curtailed its services.

  b. Compensatory damages as provided by Fla. Stat. § 501.211(2), in an amount to be established at trial;

  c. Attorney fees and costs incurred in the prosecution of this action, as provided by Fla. Stat. § 501.211(2); and

  d. Such other and further relief as the Court may deem appropriate in the circumstances.

## COUNT III
## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

94. Plaintiff incorporates Paragraphs 1 through 74, as if set forth fully here.

95. A valid contract existed between ADT and each of its customers whom defendants solicited.

96. Defendants were well aware of these contracts, and built their deception upon the notion that their offers of "upgrades" were in accordance with these contracts.

97. Defendants intentionally procured the termination of these contracts.

98. Defendants' encroachment into ADT's contracts with its customers was accomplished through deception, without justification or legal privilege.

99. Defendants' intentional encroachment into ADT's contracts caused ADT harm. ADT is entitled to compensatory and punitive damages as a result.

16

WHEREFORE, ADT respectfully requests that the Court enter judgment in its favor and against Defendants, and award the following relief:

    a.    Compensatory damages in an amount to be established at trial;

    b.    Punitive damages in a sum sufficient to deter defendants from engaging in further deceptive sales tactics; and

    c.    Such other and further relief as the Court may deem appropriate in the circumstances.

## COUNT IV
## COMMERCIAL DISPARAGEMENT

100. Plaintiff incorporates Paragraphs 1 through 74, as if set forth fully here.

101. Defendants' sales activities include statements about ADT equipment and services that are false.

102. Defendants' false and misleading statements demean the quality of ADT's goods and services.

103. These false and misleading statements have caused and will continue to cause ADT to lose sales and good will, and to suffer damages.

WHEREFORE, ADT respectfully requests that the Court enter judgment in its favor and against Defendants, and award the following relief:

    a.    Compensatory damages in an amount to be established at trial;

    b.    Punitive damages in a sum sufficient to deter defendants from engaging in further deceptive sales tactics; and

    c.    Such other and further relief as the Court may deem appropriate in the circumstances.

## JURY DEMAND

ADT demands a jury trial of all issues triable to a jury.

Dated:  August 22, 2012                              Respectfully submitted,

                                                                    s/ C. Sanders McNew
                                                                     _____
                                                                     C. Sanders McNew
                                                                     mcnew@mcnew.net
                                                                     Florida Bar No. 0090561
                                                                     McNEW P.A.
                                                                     2385 NW Executive Center Drive
                                                                     Suite 100
                                                                     Boca Raton, Florida  33431
                                                                     Tel:  (561) 299-0257
                                                                     Fax: (561) 299-3705

                                                                   *Counsel for the Plaintiff, ADT LLC*