UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-80898-Civ-Ryskamp/Hopkins

ADT, LLC,

    Plaintiff,

vs.

ALARM PROTECTION TECHNOLOGY
FLORIDA, LLC, and JACOB DAHL,

    Defendants.
_____/

## REPORT AND RECOMMENDATION AS TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (DE 6)

**THIS CAUSE** has come before this Court upon an Order Referring Plaintiff's Motion for a Preliminary Injunction to the undersigned United States Magistrate Judge for a Report and Recommendation. (DE 35). Defendants filed their responses to the motion (DE 13, 42), and Plaintiff filed its reply papers. (DE 18, 43).[1]

This Court held an evidentiary hearing on the motion on October 15, 2012. For the reasons that follow, this Court **RECOMMENDS** that the District Court **GRANT** Plaintiff's Motion for a Preliminary Injunction.

---

[1] Defendant Dahl filed his response on October 4, 2012, after the District Court granted his motion to set aside the Clerk's Entry of Default. (DE 40).

## BACKGROUND

In its Complaint, Plaintiff ADT, LLC ("ADT") alleges causes of action against Defendants for unfair competition in violation of the Lanham Act (15 U.S.C. § 1125(a)(1)) and Florida's Deceptive and Unfair Trade Practices Act (FDUTPA)(Fla. Stat. § 501.201). (DE 1). Specifically, ADT contends that Defendants have been intentionally misleading ADT's customers by suggesting that they represent ADT and that the customer's home security system needs to be "upgraded." According to ADT, sales representatives of Defendant Alarm Protection Technology Florida, LLC ("APT"), including Defendant Jacob Dahl, intentionally prey upon ADT's customers and induce them, through misrepresentations, to enter into new contracts with APT and replace ADT's equipment with an installation by APT.

In support of its request for injunctive relief to enjoin Defendants from making false or misleading statements to its customers, ADT provides written statements from five ADT customers who were approached by APT sales representatives and advised that their security systems should be upgraded. *See* Affidavit of Connie Tascione (DE 6, Ex. 2); Declaration of Mona Gartrell (DE 6, Ex. 3); Mary L. Demps' Letter dated June 27, 2012 (DE 6, Ex. 5); Affidavit of Nieves Nunes (DE 6, Ex. 6); and Affidavit of Robert Wimberly (DE 6, Ex. 7). Three of these customers identified Defendant Dahl as the salesman who contacted them. The customer statements are consistent in that each contends that Defendant Dahl or another APT representative approached them unsolicited, and encouraged them to install new security equipment in their homes. Each customer was led to believe that the representative was affiliated with ADT. Four of the five customers agreed to "update" their security equipment and only learned after the new equipment was installed that ADT was no longer their service provider.

In opposing ADT's motion for injunctive relief, APT contends that its sales representatives are "independent contractors," and that to the extent any of them has "engaged in unlawful or misleading sales tactics, they were acting in direct contravention of [APT's] policies and procedures, and acting outside the scope of their relationship and authority with [APT]." (DE 13 at page 2). Essentially, APT seeks to disavow any knowledge or responsibility for the purportedly suspect tactics of its sales team. APT also contends that the customers who agreed to the installation of new security equipment "were well aware and fully informed that they were signing a new agreement with [APT], and that [APT] had no affiliation with ADT." *Id.* In support of this argument, APT provides transcripts of the "Welcome Calls" made to three of the five customers referenced in ADT's motion. These recorded phone calls are made at the end of each APT transaction, wherein a customer service operator speaks directly to the customer to "ensure that [he] understands the terms of the service agreement into which he [] is entering, and that the Independent Representative did not make any false or misleading representations during the sales process." (DE 13 at page 4). *See* Supplemental Affidavit of Richard Brimhall (DE 26).

Defendant Dahl's opposition papers adopt and incorporate APT's response to the motion and additionally allege that Mr. Dahl has never had a complaint filed against him. Mr. Dahl states that he would suffer "enormous harm" if he is enjoined from marketing APT's security systems to ADT's customers, because such is his "only source of income." (DE 42 at page 3). Dahl contends that a few complaints out of "thousands of contracts" do not warrant the imposition of an injunction and that these dissatisfied customers are merely experiencing "buyer's remorse." *Id.*

Defendant Dahl testified at the October 15th hearing that he has worked in the security

3

industry for ten years. Dahl stated that while at work he always wears his uniform shirt with the APT logo on it and that company policy requires him to wear an identification badge which displays his name, photo and "employee number."

Richard Brimhall, APT's general manager, also testified at the hearing. He stated that APT has offices in ten states and that it started operations in Florida in 2011. Brimhall testified that during the one year since APT began operating in Florida, it has entered into contracts with approximately 3100 homes, 2600 of which are accounts that were "taken over" from ADT. Brimhall insisted that APT's sales representatives are independent contractors because they are responsible for filing their own taxes, they receive no benefits, and they are paid a commission. Brimhall also contended that Defendant Dahl is an independent contractor, even though he is in charge of the Florida branch, reports directly to APT's owner and CEO, and is paid a salary.[2]

During the hearing, APT entered into evidence the lawn signs for both APT and ADT. *See* Defendants' Exhibits 1 and 2. According to Brimhall, the signs are distinctly different in that the APT sign is shaped like a shield and is red and blue with white lettering, whereas the ADT sign is shaped like a stop sign and is blue with white lettering. *See* Defendants' Exhibits 1 and 2. The initials for each company are featured prominently on both signs.

At the close of the evidentiary hearing, counsel for both Defendants argued that ADT has failed to meet its burden as to the four prerequisites for injunctive relief.

---

[2] According to Brimhall, even though Dahl's business card identifies him as APT's regional sales manager, in reality Dahl is merely an independent contractor sales representative. Brimhall testified that APT employees are permitted to give themselves any title they choose for purposes of their business cards, even if it is inaccurate. Brimhall claimed that an employee's title is "insignificant" and so such misrepresentations do not violate APT's Code of Conduct.

## **DISCUSSION**

As the party seeking injunctive relief, ADT bears the burden of establishing four elements: (1) that it has a substantial likelihood of success on the merits; (2) that it will be irreparably harmed if injunctive relief is denied; (3) that the threatened injury outweighs whatever damage the injunction may cause; and, (4) that the injunction, if issued, will not be adverse to the public interest. *See Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002) (*citing Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001)); *Siegel v. LePore*, 234 F.3d 1163, 1175 (11th Cir. 2000) (*en banc*)).

It is well established that "[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to all four elements." *Id.* at 1176. Generally, the first element is the most important because granting a temporary restraining order or motion for preliminary injunction would be inequitable if the movant has no chance of success on the merits. *See Butler v. Alabama Judicial Inquiry Comm'n*, 111 F. Supp 2d 1224, 1229-1230 (M.D. Fla. 2000). "If the movant is unable to establish a likelihood of success on the merits, a court need not consider the remaining conditions prerequisite to injunctive relief." *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002) (*citing Pittman v. Cole*, 267 F.3d 1269 (11th Cir. 2001). "The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated." *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001). Finally, under Rule 65, the court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or

5

restrained." Fed. R. Civ. P. 65(c).

### 1. Substantial Likelihood of Success on the Merits

The first element is satisfied if "good reasons for anticipating [success] are demonstrated." *Southern Wine and Spirits of America, Inc. v. Simpkins*, 2011 WL 124631, *2 (S.D. Fla. Jan. 14, 2011). Merely advancing a colorable claim is insufficient. *Id.* (*citing City of Jacksonville v. Naegele Outdoor Adver. Co.*, 634 So.2d 750, 753 (Fla. Dist. Ct. App.1994)). As discussed below, to achieve success on its claims, ADT must show that Defendants engaged in unfair competition in violation of the Lanham Act and the FDUTPA.

The FDUTPA prohibits any "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204. It is well settled that the FDUTPA is to be "liberally construed" in accordance with the Federal Trade Commission Consumer Protection Act. *Cumulus Media, Inc. v. Clear Channel Communications, Inc.*, 2001 WL 34104923, *3 (N.D. Fla. Nov. 1, 2001)(*citing* 15 U.S.C. § 45(a)(1); Fla. Stat. § 501.202). An "unfair trade practice" is defined as one that "offends established public policy" and that is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Samuels v. King Motor Co.*, 782 So.2d 489, 499 (Fla. Dist. Ct. App. 2001). "Deceptive practices" are those that are likely to mislead consumers. *Davis v. Powertel*, 776 So.2d 971, 974 (Fla. Dist. Ct. App. 2000).

Here, ADT has established that it is likely to succeed on its claims based on the evidence that Defendants intentionally targeted ADT's customers and engaged in highly deceptive and misleading sales tactics. Beginning with APT's similar name and logo, it is evident that Defendants attempted to capitalize on the comfort, familiarity and trust that ADT's customers

had with their existing security system provider. By implying that their systems were not up-to-date, or faulty in some way, Defendants preyed upon ADT's customers' fears that they were not adequately protected. Under these circumstances, ADT's customers were extremely susceptible to Defendants' suggestion that an easy solution to the problem would simply involve a "free upgrade." To this end, the statements provided by ADT's customers in support of its motion are compelling and provide sufficient evidence of the unfair and unconscionable acts engaged in by Defendants. This Court finds that Defendants' efforts to lure away ADT's client base under false pretenses is exactly the conduct the FDUTPA was designed to guard against.

Similarly, ADT's claim of unfair competition under the Lanham Act is also likely to succeed based on Defendants' use of false and misleading statements of fact, intended to confuse and deceive ADT's customers into signing contracts with APT. The Lanham Act prohibits the use in commerce any of word, term, name, symbol, or any combination thereof, which "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a). To prove a violation of Section 1125(a), a plaintiff must prove (1) that it had a valid trademark and (2) that the defendant adopted an identical or similar mark such that consumers were likely to confuse the two. *Gift of Learning Foundation, Inc. v. TGC, Inc.*, 329 F.3d 792, 797 (11th Cir. 2003). Notably, courts have "repeatedly held that a showing of intent is not required to demonstrate the likelihood of confusion." *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 381 (6th Cir. 2006)(*citing AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 799 (6th Cir. 2004)). "After all, if 'potential purchasers are confused, no amount of good faith can make

them less so.'" *Lorillard Tobacco Co.*, 453 F.3d at 381 (*quoting Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 596 (5th Cir. 1985)).

Here, the evidence establishes that ADT has a valid and protectable interest in its trademark, based on its long-standing reputation as a national provider of residential and commercial security services. As noted above, this Court finds APT's name and logo to be confusingly similar to ADT's. *See Rain Bird Corp. v. Taylor*, 665 F. Supp. 2d 1258, 1269 (N.D. Fla. Oct. 14, 2009)(where plaintiff had a protectable interest in its trademark, and defendant adopted a mark that was confusing similar to plaintiff's, such that it created a "likelihood of consumer confusion as to the proper origin of [defendant's] goods and services," the court concluded that defendant had violated §1125(a)). This confusion is only compounded by APT's representatives proffering business cards with false titles, regardless of the misplaced reliance that such would engender among their prospective clientele, and in making misleading statements about ADT and APT's affiliation. Given that the Lanham Act is a strict liability statute, Defendants' intent to cause or avoid this confusion has no bearing on the Court's analysis. In this regard, Defendants' reliance on APT's Code of Conduct, the customer questionnaire form, and the "Welcome Call" to demonstrate their efforts to ameliorate any possible confusion, are unavailing. *See Taubman Co. v. Webfeats*, 319 F.3d 770, 775 (6th Cir. 2003)("the Lanham Act is a strict liability statute . . . [i]f consumers are confused . . . the offender's motives are largely irrelevant"). Rather, based on this record, and the actual customer confusion as established by ADT, the Court finds that ADT is likely to succeed on the merits of

these two claims.[3]

Moreover, the Court finds that APT's attempts to distance itself from its sales representatives by categorizing them as "independent contractors" is unlikely to be a successful defense to the Complaint, because, at this stage, APT has failed to provide any evidence to support this argument.

In deciding a plaintiff's employment status, courts look at the "economic realities" of the case. *See Antenor v. D & S Farms*, 88 F.3d 925, 929 (11th Cir. 1996). "[T]he label the parties put on the relationship is not determinative, nor is it relevant whether the parties intended to create an employment relationship." *Molina v. S. Fla. Express Bankserv, Inc.*, 420 F. Supp. 2d 1276, 1283 (M.D. Fla. 2006). Analysis under the "economic realities" test involves the following factors:

> 1. The nature and degree of control the alleged employer exercises over the worker;
>
> 2. The alleged employee's opportunity for profit or loss depending on his managerial skills;
>
> 3. The alleged employee's investment in equipment or materials for his task;
>
> 4. Whether the service rendered requires special skills;

---

[3] To the extent that APT attempts to dispel this notion with the transcripts from the "Welcome Calls," the Court is unpersuaded. The transcripts reveal that the call operators were, at best, ineffectual at clarifying that APT had no affiliation with ADT, and also demonstrate the depths of the customer confusion caused by APT's similar name, logo, and its representatives' misleading statements. For example, at least two ADT customers told the APT call operator that they were not currently receiving security services from any other company, even though both were current subscribers of ADT. These statements reveal their erroneous understanding that they were receiving upgrades from ADT, their current provider. *See* Mary Demps Transcript at page 5 (DE 26, Ex. 1); Nieves Nunes Transcript at page 5 (DE 26, Ex. 3).

> 5. The degree of permanence of the relationship; and
>
> 6. Whether the service is an integral part of the employer's business.

*Arasimowicz*, 2008 WL 1995039 at *2 (*citing Santelices v. Cable Wiring*, 147 F. Supp. 2d 1313, 1319 (S.D. Fla. 2001)).

Here, based on Defendants' representations, it appears that at least four of these factors weigh in favor of finding an employer/employee relationship. First, it is clear that APT imposes a significant degree of control over how its sales representatives perform their work. APT states that it has developed and implemented its own Code of Conduct, which sets forth strict standards governing the methods used by its sales representatives, and APT's "Welcome Calls" are used to ensure compliance with its code. Moreover, APT sales representatives are required to wear a uniform shirt with the company's logo and a badge displaying their "employee number." *See Crouch v. Guardian Angel Nursing, Inc.*, 2009 WL 3737887, *19-20 (M.D. Tenn. Nov. 4, 2009)(mandatory compliance with code of conduct and name tag requirement were factors that weighed in favor of finding nurses were employees rather than independent contractors). Second, the security equipment installed by APT's sales representatives belongs to APT, as do the contracts and questionnaires the representatives use during their sales calls. Third, the importance of the sales representatives' service to APT's business is evidenced by APT's reliance on its door-to-door sales program as its "most significant source of business." (DE 13 at page 18). Finally, Defendant Dahl states that the work he performs for APT is his "only source of income." (DE 42 at ¶11). *See Santelices*, 147 F. Supp. 2d at 1318 (courts consider whether the employee is economically dependent on the employer); *see also Hopkins v. Cornerstone Am.*,

545 F.3d 338, 343 (5th Cir. 2008)(courts "focus on whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself").

Based on these facts and APT's failure to establish that its sales representatives were, in fact, independent contractors, the Court must conclude that this defense is not likely to succeed.[4]

## 2. Threat of Irreparable Harm

The Supreme Court has stated that this element hinges on the irreparableness of the harm. "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974). *See also MacGinnitie v. Hobbs Group, LLC*, 420 F.3d 1234, 1242 (11th Cir. 2005)(the movant must demonstrate that it will suffer a harm which "cannot be undone through monetary remedies," for example, "in the form of lost opportunities, which are difficult, if not impossible, to quantify"). The harm alleged "must be actual and imminent rather than remote or speculative." *Medi-Weightloss Franchising USA, LLC v. Medi-Wieghtloss Clinic of Boca*, 2012 WL 260902, *8 (M.D. Fla. Jan. 3, 2012).

The Eleventh Circuit has held that "the loss of customers and goodwill is an irreparable injury" that warrants a preliminary injunction. *Mohr v. Bank of New York Mellon Corp.*, 393 Fed. Appx. 639, 646 (11th Cir. 2010)(*quoting BellSouth Telecomms,. Inc. v. MCIMetro Access*

---

[4] In any event, even if the sales representatives were deemed independent contractors, the Court is persuaded by ADT's argument that under Florida's agency principles, APT could be found vicariously liable for the acts of its sales force. (DE 18 at pages 2-5).

*Transmission Servs., LLC,* 425 F.3d 964, 970 (11th Cir. 2005)).

Based on the irreparable harm ADT is suffering and will continue to suffer in terms of lost customers and goodwill if Defendants are not immediately enjoined from making false and misleading statements to their customers, this Court finds that this element weighs in favor of granting a preliminary injunction.

### 3. Balancing the Harm

Although Defendants allege that a preliminary injunction would significantly undermine their ability to do business, the Court rejects this argument. The injunction would only prohibit Defendants from making false and misleading statements in soliciting business from ADT's customers. Since such an injunction would not preclude Defendants from continuing to engage in sales calls to solicit new subscribers to their residential security systems, the Court finds there is minimal, if any, harm to them. On the other hand, if an injunction is not entered, ADT stands to lose: (1) longstanding customers, (2) revenues from the ongoing nature of their subscriptions, and (3) their clients' goodwill. Thus, the balancing of harm weighs in favor of granting the preliminary injunction.

### 4. Public's Interest

Finally, the public's interest also weighs in favor of a preliminary injunction since it is against public policy to allow door-to-door sales representatives to engage in deceptive practices to drum up business.

Based on this record, the Court finds that ADT has met its burden of persuasion on the four requirements for a preliminary injunction.

### 5. Bond Requirement

At the hearing, counsel for ADT requested that this Court make a finding that no bond is required based on the extremely narrow relief sought by ADT, namely, to enjoin Defendants from violating the laws of unfair competition by refraining from making false and misleading statements.

"The amount of an injunction bond is within the sound discretion of the district court." *Carillon Importers, Ltd. v. Frank Pesce International Group*, 112 F.3d 1125, 1127 (11th Cir. 1997). It is well settled that a court may, "in the exercise of discretion, determine a bond is unnecessary to secure a preliminary injunction 'if there is an absence of proof showing a likelihood of harm.'" *SizeWise Rentals, Inc. v. Mediq/PRN Life Support Services, Inc.*, 216 F.3d 1088 (10th Cir. 2000)(*quoting Coquina Oil Corp. v. Transwestern Pipeline Co.*, 825 F.2d 1461, 1462 (10th Cir. 1987)).

Given that ADT does not seek to preclude Defendants from soliciting their existing customers, but merely seeks to preclude Defendants from making false statemens, the Court finds there is no evidence to show that Defendants will likely suffer harm if the injunction is imposed. Therefore, this Court recommends that no bond be required of ADT. *See United Teachers of Dade v. Stierheim,* 213 F. Supp. 2d 1368, 1376 (S.D. Fla. 2002)(court granted preliminary injunction, but found that "[n]o bond will be required inasmuch as no conceivable economic harm can result from the injunction").

## RECOMMENDATION TO THE DISTRICT COURT

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that the District Court **GRANT** Plaintiff ADT's Motion for a Preliminary Injunction (DE 6), as follows:

Defendants APT and Dahl, and their respective agents, servants, employees, independent contractors, officers, attorneys, successors and assigns, be and hereby are immediately enjoined from the following conduct so long as this case remains pending in this Court:

1. making any false or misleading statement, or any statement that is likely to or intended to confuse an ADT customer or potential customer, regarding any relationship between ADT and APT, Dahl, or APT's other agents; or

2. making any false or misleading statement, or any statement that is likely to or intended to confuse an ADT customer or potential customer, regarding the function, performance, capabilities, specification, features, requirements, reliability, availability, origin, sponsorship, approval, or design of any ADT equipment, security systems, or services, or to misrepresent to any ADT customer that such customer's ADT security system is outdated or deficient; or

3. making any false of misleading statement, or any statement that is likely to or intended to confuse an ADT customer or potential customer into believing that ADT is no longer doing business or has curtailed its services.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Kenneth L. Ryskamp, Senior United States District Court Judge for the

Southern District of Florida, within fourteen (14) days of being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1) (2009) (providing that "within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court.") *See also* Fed. R. Civ. P. 72(b) (2009) ("Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy.") Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. *See LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988), *cert. denied*, 488 U.S. 958 (1988); *RTC v. Hallmark Builders, Inc*, 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE and SUBMITTED** in Chambers this 16 day of October, 2012, at West Palm Beach in the Southern District of Florida.

*James M. Hopkins*

---

JAMES M. HOPKINS
UNITED STATES MAGISTRATE JUDGE


Copies to:

The Hon. Kenneth L. Ryskamp, Senior United States District Court Judge for the Southern District of Florida

Counsel of Record