UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION


ADT LLC,

     Plaintiff,

        v.                           Case No. 9:12cv80898-RYSKAMP

ALARM PROTECTION TECHNOLOGY
FLORIDA, LLC, *et al*.,

     Defendants.

_____/


**ADT'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**


     Plaintiff ADT LLC ("ADT") here opposes defendants' motion to dismiss [DE 76] the

First Amended Complaint [DE 70] ("Complaint"). Jurisdiction lies in Florida over Adam

Schanz and Alarm Protection Technology, LLC, ("APT LLC") on the facts alleged in the

Complaint and otherwise presented to the Court[1] *because of their own misconduct*, and also

because of the acts of their agent and alter ego, Alarm Protection Technology Florida, LLC,

("APT Florida"). Moreover, none of the defendants' objections to the merits of ADT's claims

survives scrutiny. The motion should be denied.


---

[1]  The Court may consider matters outside the pleadings on a motion to dismiss under Rule
12(b)(2). *See, e.g., Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp.
2d 1213, 1221 (S.D. Fla. 2009). ADT's jurisdictional allegations must be assumed as true at the
pleading stage. Where the defendant's affidavits conflict with the plaintiff's complaint and
proof, "the court must construe all reasonable inferences in favor of the plaintiff." *Meier v. Sun
Int'l Hotels, Ltd*., 288 F.3d 1264, 1269 (11th Cir. 2002).

## INTRODUCTION

Defendants' motion ignores the obvious bases of this Court's jurisdiction over Schanz and APT LLC – most notably, each's central role in the infringement of ADT's trademarks.[2]  In 2008, while selling alarm systems for a company called Silverline Security,[3] Schanz decided to open his own alarm company, APT LLC.  Schanz filed articles of organization for APT LLC with the Utah Department of State on December 30, 2008,[4] that made Schanz the sole Manager of the company.  [DE 86-3.]  Schanz chose the name "Alarm Protection Technology," designed the "APT" acronym and trademark, and began to create his own alarm company around the "APT" brand.  [DE 84-2 at 7, Answers 10, 11; DE 86-2 at 17, Answer 47.]  As shown at length in ADT's motion to enjoin further use of the APT acronym, [DE 81 at 3-9] the APT trademark infringes ADT's mark.  [DE 70, ¶¶ 15, 88-96.]  Schanz's history of selling alarm systems for Silverline prior to the formation of APT LLC makes it a reasonable inference that Schanz was

---

[2]   While ignoring the heart of the Complaint, defendants attempt to defend against it by *non sequitur*, attacking ADT on the shopworn notion that a bold offense makes the best defense.  They accuse ADT of "stifling legitimate competition" by suing "entrepreneurial security companies" to chase them from the market. [DE 76 at 2.] The accusation is irrelevant to whether APT is violating the Lanham Act.  It is also false.  The market is filled with dozens of security systems providers; ADT has no interest in closing any of them, *including APT*.  ADT does not bring this action to stop APT "from offering a competing brand of products and services to [ADT] customers," [DE 76 at 2] and has nowhere asked the Court to shut down APT, or even to prevent APT from marketing to ADT customers.  Rather, ADT seeks only to stop APT from continuing to confuse the market with an infringing trademark and abusive sales tactics, in a sensible effort to defend ADT's trademarks and the integrity of the security systems market.

[3]   Google searches for "Schanz Silverline" return a number of pages on consumer complaint message boards about Schanz's activities for Silverline in Florida and Utah going back to 2008.  *See, e.g.*, http://www.complaintsboard.com/complaints/silverline-security-west-palm-beach-florida-c127720.html (2008); http://www.complaintsboard.com/complaints/silverline-security-utah-c405282.html (2010).  It also returns Schanz's LinkedIn.com profile, which identifies Schanz as a Silverline "sales rep."  *See* http://www.linkedin.com/pub/adam-schanz/b/681/282.

[4]   https://secure.utah.gov/bes/action/details?entity=7220155-0160.

well-aware of ADT's name and trademark[5] when he created APT LLC, and that the confusing similarities between the APT and ADT names and marks were anything but accidental.

By 2010, Schanz had created a website branded with the infringing APT acronym.[6]  The website used the domain name "aptsafe.com"; it prominently displayed the APT trademark on each page; it was built around the slogan, "You're not safe until you're APT safe"; and it referred customers to a toll-free number featuring the APT acronym, 800.APT.3008.  Internet archives confirm that APT LLC published the website to the Internet no later than November 3, 2010, and the site bears a 2010 copyright notice.[7]  The site remains online at www.aptsafe.com, and continues to feature the infringing domain name, trademark and toll-free number.

Schanz also developed marketing materials containing the APT acronym and trademark. Schanz designed APT's signage featuring the infringing APT trademark.  [DE 84-2 at 7, Answer 11.]  Schanz, as "Executive Producer," also produced an APT LLC video advertisement that APT LLC published to the Internet on December 11, 2011.[8]  The advertisement prominently features the APT trademark and the APT slogan, "You're not safe until you're APT safe."

It was not until after Schanz and APT LLC had already developed the infringing APT brand and launched the APT website that Schanz created the other APT affiliates.  Schanz organized APT Florida as a Utah company in June 2011;[9] Schanz registered the infringing name

---

[5]  Schanz characterizes ADT as the "dominant" market provider of alarm systems.  [DE 76 at 2.]

[6]  The November 2010 version of the www.aptsafe.com site may be found archived online at http://web.archive.org/web/20101103020730/http://www.aptsafe.com/residential.

[7]  http://web.archive.org/web/20101103020730/http://www.aptsafe.com/residential.

[8]  http://www.youtube.com/watch?v=i9sB_RudBLs.

[9]  https://secure.utah.gov/bes/action/details?entity=8015133-0160.  A search for "Alarm Protection" on Utah's online corporations database (secure.utah.gov/bes) shows that Schanz has organized sixteen state-level sales affiliates like APT Florida.

"APT Florida" as a "doing business" name with Utah; [DE 86-5] and Schanz registered similar infringing "doing business" names using the APT acronym for other newly-created state-level APT sales affiliates.[10]  Schanz also registered APT Florida as a foreign limited liability company with the Florida Department of State.[11]  Schanz admits that he "spent time in Florida in connection with the creation and organization of" APT Florida.  [DE 86-2 at 14, Answer 38.]

On December 22, 2011, Schanz organized a holding company using the infringing acronym, "APT Holdings, LLC," with Schanz as its Manager, [DE 87-3] to hold the ownership interests of the various APT affiliates.  [DE 84-2 at 7-8, Answer 12.]  Schanz also that day organized "Alarm Protection Technology Management, LLC" ("APT Management"), to handle most operational functions of APT Florida and, presumably, the other state-level APT operating companies.  [DE 86-4.]  APT Management provides APT Florida with bookkeeping and accounting services [DE 86-2 at 32, Answers 90, 91] and other administrative services [DE 86-2 at 33, Answer 93]; receives payments from APT Florida customers [DE 86-2 at 29, Answer 79]; pays APT Florida sales agents [DE 86-2 at 28, Answers 76, 77]; provides customer support for APT Florida's customers [DE 86-2 at 32, Answer 89]; and conducts the "Welcome Calls" [DE 26] for new APT Florida customers [DE 86-2 at 5, Answer 14].  Schanz is shown in the Utah records as the Organizer and Manager of each APT affiliate.  [*E.g.*, DE 87-3 at 2; DE 86-4 at 2.] Notwithstanding the holding-company structure Schanz has created, Schanz's lieutenants understand Schanz to be the owner of APT.  [DE 48 at 64.]

---

[10]  *See, e.g.,* https://secure.utah.gov/bes/action/details?entity=8015136-0151 (Alaska); https://secure.utah.gov/bes/action/details?entity=8015128-0151 (Arkansas); https://secure.utah.gov/bes/action/details?entity=8171390-0151 (Georgia): https://secure.utah.gov/bes/action/details?entity=8179921-0151 (Louisiana); https://secure.utah.gov/bes/action/details?entity=8015175-0151 (Mississippi); https://secure.utah.gov/bes/action/details?entity=8171377-0151 (Tennessee); https://secure.utah.gov/bes/action/details?entity=8168946-0151 (Texas).

[11]  *See* http://www.sunbiz.org/COR/2012/0612/36263663.tif.

As shown in the argument below, the active involvement of Schanz and APT LLC in infringing ADT's trademarks is a sufficient basis for asserting jurisdiction over them both.  In addition, both are amenable to Florida jurisdiction based on the acts ADT has alleged as unfair trade practices.  As already noted, Schanz came to Florida to create and organize APT Florida. [DE 86-2 at 14, Answer 38.]  APT Florida has no employees in Florida, but operates entirely with "independent contractors."  [DE 48 at 63; DE 84-2 at 2-3, *cf.* Answer 2 *with* Answer 3.] Defendant Jacob Dahl, APT Florida's "regional sales manager," also manages APT Florida's Florida office even though he too works as an independent contractor sales agent.  [DE 86-2 at 8-9, Answers 22-24; DE 48 at 62-63.]  Dahl reports to Schanz [DE 48 at 64], and Schanz serves as "head of sales and marketing" for APT Florida.  [DE 48 at 49.]  APT Florida's General Manager, Richard Brimhall, spends no time in Florida [DE 86-2 at 13, Answer 37; DE 48 at 49], also serves as General Manager of APT LLC [DE 48 at 49], and works from APT LLC's offices in Utah.  [DE 48 at 49.][12]

APT Florida exists only to generate sales for APT LLC and Schanz in Florida.  There is no indication that APT Florida has any existence apart from the other APT affiliates.  There is no

---

[12]   The Court should note that APT Florida's answers to interrogatories [DE 84-2] and requests for admissions [DE 86-2] are full of answers that contradict the sworn testimony of both of the APT Florida representatives, Richard Brimhall and Jacob Dahl, who testified at the October 15 evidentiary hearing.  For example, APT Florida called Richard Brimhall to testify as its General Manager, [DE 48 at 38] yet APT Florida now denies that Brimhall serves as General Manager. [DE 86-2 at 13, Answer 36.]  Dahl testified that he reports to Schanz, [DE 48 at 64] but APT Florida denies it.  [DE 86-2 at 9, Answer 25.]  Brimhall identified Schanz as the "head of sales and marketing" for APT Florida, [DE 48 at 49] but APT Florida denies it.  [DE 86-2 at 3-4, Answer 7.]  Dahl testified that he trains APT Florida sales agents, [DE 48 at 55, 61] but APT Florida now denies it.  [DE 86-2 at 9, Answer 26.]  Brimhall was able to testify that 2,600 of 3,100 APT Florida accounts were "takeovers" from other alarm companies [DE 48 at 39]; APT Florida later contested the Court's finding that all 2,600 were former ADT accounts [DE 52 at 19]; but APT Florida now claims not to track this data.  [DE 86-2 at 6-8, Answers 16-20.]  These are but examples; there are a number of others; together, they call into question the truthfulness and good faith of APT Florida's discovery responses.

indication that APT Florida markets goods or services for any other company.  Schanz, with ADT LLC, exercises control over all aspects of APT Florida's sales activities by supervising and directing those agents' training, sales, activities, and compliance with a code of conduct promulgated by APT LLC.  [DE 70, ¶¶ 16-21, 100-04, 106-09; *e.g.,* DE 48 at 38, 42-43, 49, 64.] ADT has alleged that APT Florida is undercapitalized.  [DE 70, ¶ 20.]  APT Florida refuses to answer discovery about its capital.  [DE 87-2 at 14-15, Answer 24.]  ADT's allegation is supported, *inter alia,* by the fact that APT Florida's sales receivables are paid into bank accounts owned or controlled by APT Management, [DE 86-2 at 29, Answer 79] that APT Florida closed its Delray Beach office, [DE 86-2 at 10, Answer 27], and that, contrary to its Utah public filings,[13] APT Florida does not occupy *any* office in Utah.  [DE 86-2 at 30, Answer 84.]  These facts suggest that APT Florida has been structured so as not to hold any assets for the satisfaction of judgments against it, and to make it difficult to locate the company for creditors seeking to execute on a judgment against APT Florida.

## ARGUMENT

The facts set forth above firmly establish the Court's jurisdiction over Schanz and APT LLC.  They also supply the grounds for these defendants' liability under the Complaint's claims under the Lanham Act and Florida law.  As shown below, defendants' motion to dismiss should be denied in all respects.

### I.    Schanz And APT LLC Are Amenable To This Court's Jurisdiction.

No fewer than three bases exist for finding jurisdiction over Schanz and APT LLC.

*First:*  Each is subject to the Court's specific jurisdiction for their own contacts with Florida

---

[13]   Utah records list APT Florida's offices as located at 189 N. Highway 89, Suite C-12, North Salt Lake, Utah.  *See* https://secure.utah.gov/bes/action/details?entity=8015133-0160. [*Accord, e.g.,* DE 86-5.]  Notwithstanding APT Florida's filings with the Utah Department of State that provide the Highway 89 address, APT Florida denies that it has offices at that address.  [DE 86-2 at 10, Answer 29.]

related to the claims here presented.  *Second:*  Each is subject to the Court's jurisdiction because APT Florida acts as each's agent in Florida.  *Third:*  Each is subject to the Court's jurisdiction as alter egos of APT Florida.  Any one of these bases suffices to subject APT LLC and Schanz to jurisdiction here.

A.      **APT LLC and Schanz are each amenable to jurisdiction based on their own acts under Florida's long-arm statute.**

The Court may assert jurisdiction over APT LLC and Schanz to the extent permitted by the Florida long-arm statute, consistent with due process.  *See Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008), *citing Sculptchair, Inc. v. Century Arts, Ltd*., 94 F.3d 623, 626-27 (11th Cir. 1996).  Section (1)(b) provides for jurisdiction over those who "commit a tortious act within this state." Fla. Stat. § 48.193(1) (b).  It extends jurisdiction over a "nonresident defendant who commits a tort outside the state that causes injury inside the state."  *Licciardello*, 554 F.3d at 1283; *accord Posner v. Essex Ins. Co*., 178 F.3d 1209, 1216 (11th Cir. 1999).  Jurisdiction meets the requirements of due process where "the defendant 'purposely established minimum contacts in the forum State.'"  *Id*. at 1285, *quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473-74 (1985) *and International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Where a nonresident defendant has knowingly caused injury directed at someone in the forum, "even a single act" will satisfy Federal due process concerns and "support the exercise of personal jurisdiction over the nonresident defendant who has no other contacts with the forum." *Licciardello*, 544 F.3d at 1285, *following Calder v. Jones*, 465 U.S. 783, 790 (1984); *accord, e.g., Exhibit Icons, LLC v. XP Companies, LLC*, 609 F. Supp. 2d 1343, 1351-52 (S.D. Fla. 2009).  Thus, "a Florida plaintiff, injured by the intentional misconduct of a nonresident expressly aimed

at the Florida plaintiff, is not required to travel to the nonresident's state of residence to obtain a remedy." *Licciardello,* 544 F.3d at 1288, *following Calder*, 465 U.S. at 1487.[14]

### 1.   APT LLC's Infringement of ADT's trademark subjects it to this Court's jurisdiction.

By these principles, APT LLC falls within the Court's jurisdiction because APT LLC infringed ADT's trademark.  APT LLC published the website www.aptsafe.com in 2010, using a domain name featuring the infringing APT acronym, the "APT" shield trademark, the toll-free number 888.APT.3008, and the slogan, "You're not safe until you're APT safe."  APT LLC also published a video advertisement on YouTube on December 17, 2011, using the same infringing APT trademark and the same "APT Safe" slogan; the ad remains online. These infringements are attributable to APT LLC.  APT LLC created and published the website before any other APT affiliate existed.  The advertisement mentions only APT.

The Complaint alleges that defendants knowingly infringed ADT's trademark.  [DE 70, ¶¶ 15, 93.]  Moreover, as shown in ADT's motion to enjoin the infringement, [DE 81 at 7-8] APT LLC's selection and use of the APT acronym must be presumed to be an intentional infringement, aimed at exploiting ADT's goodwill and confusing ADT's customers.  *See, e.g., Polo Fashions, Inc. v. Rabanne*, 661 F. Supp. 89, 95 (S.D. Fla. 1986) (selection of a near-identical mark "is evidence of an intent to trade upon the reputation and good will of" the infringed mark); *Pfizer, Inc. v. Y2K Shipping & Trading, Inc.*, 70 USPQ2d 1592 (E.D.N.Y. 2004) (where defendant chose to offer identical products and services under a name that "mirrors" the plaintiff's mark "in both spelling and sound," the court may conclude as a matter of law that "deliberate copying has occurred"); *Kadant, Inc. v. Seeley Machine, Inc.,* 244 F. Supp. 2d 19, 32-

---

[14]   *Licciardello* and *Calder* provide a short but complete answer to defendants' arguments [DE 76 at 8-9, 12-13] that Federal due process concerns would be offended by forcing Schanz and APT LLC to appear and defend the infringement claims against them in Florida.

33 (N.D.N.Y. 2003) (inferring intent from adoption of "APS" acronym for a product in direct

competition with established product with an "AES" acronym trademark).

Trademark infringement is a tort, *see Monsanto Co. v. Campuzano*, 206 F. Supp. 2d

1252, 1263-64 (S.D. Fla. 2002) – here, an intentional tort directed at ADT.  ADT is a resident of

Florida; the infringement was directed at ADT in Florida; the effects of the infringement are

suffered by ADT in Florida.  Under these circumstances, the federal courts here have not

hesitated to find jurisdiction over nonresidents who use web sites to infringe the trademarks of

Florida residents pursuant to Section (1)(b) of the Florida long-arm statute.  *See Licciardello*, 544

F.3d at 1283-84 (finding jurisdiction over nonresidents whose website contained infringing

material, where the infringed party resided in Florida, and where the infringing site was

accessible in Florida); *Healthcare Appraisers, Inc. v. Healthcare FMV Advisors, LLC*, No. 10-

80293, 2011 WL 4591960, *6 - *7 (S.D. Fla. Sept. 30, 2011) (same; finding jurisdiction over

nonresident infringer because the infringement was alleged to have "individually targeted

Plaintiff in order to misappropriate its name and reputation for commercial gain"); *KVAR Energy

Savings, Inc. v. Tri-State Energy Solutions*, No. 6:08-cv-85-Orl-19KRS, 2009 WL 103645, *11 -

*12 (M.D. Fla. Jan. 15, 2009) (same; specific jurisdiction over nonresident lies where its website

displays trademark alleged to be infringing, and is accessible in Florida); *Cash4Gold, LLC v.

C.J. Environmental, Inc*., No. 08-61662-CIV, 2009 WL 1605354, *1 (S.D. Fla. June 8, 2009)

(same; following *Licciardello*); *Jackson v. Grupo Industrial Hotelero, S.A*., No. 07-22046-CIV,

2008 WL 4648999, *8-9 (S.D. Fla. Oct. 20, 2008) (predating *Licciardello* but recognizing

forum's jurisdiction over nonresident whose website infringes the trademarks of a forum

resident).  "The Constitution is not offended by the exercise of Florida's long-arm statute to

effect personal jurisdiction over" a nonresident whose conduct outside Florida "was calculated to

cause injury to Plaintiff in Florida." *Healthcare Appraisers, supra*, *8 (following *Calder* and *Licciardello*).

ADT LLC's knowing infringement of Florida resident ADT's trademarks is by itself a complete and sufficient and compelling basis for finding jurisdiction over APT LLC in Florida.

**2.      Schanz is subject to jurisdiction as an infringer and because Schanz was physically present in Florida.**

Schanz too is amenable to the Court's jurisdiction for his own direct participation in defendants' infringement of ADT's trademark.  Individuals who cause a corporation to infringe a trademark are directly liable for the infringement:

> There can be no doubt but that a trademark, like a patent, can be infringed by an individual.  It is infringed when an individual performs the act or does the things that the patent or trademark law protects against. The fact that the persons thus acting are acting for a corporation also, of course, may make the corporation liable under the doctrine of respondeat superior. It does not relieve the individuals of their responsibility.  Obviously here if there was an infringement by the corporation, this infringement was caused by some one or more persons either officers or employees of the corporation who caused the acts to be done.

*Mead Johnson & Co. v. Baby's Formula Serv., Inc.*, 402 F.2d 19, 23 (5th Cir. 1968).  *Accord, e.g., Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1477-78 (11th Cir. 1991); *Healthcare Appraisers*, 2011 WL 4591960 at *5; *Cash4Gold*, 2009 WL 1605354 at *1; *Turner Greenburg Associates, Inc. v. C&C Imports, Inc.*, 320 F. Supp. 2d 1317, 1334 (S.D. Fla. 2004); *Levi Strauss & Co. v. Diaz*, 778 F. Supp. 1206, 1207 (S.D. Fla. 1991).

As set forth in the Introduction, Schanz was the active force behind the creation, organization and operation of APT LLC, APT Florida and the other APT affiliates.  Schanz is the Manager of each of the APT affiliates.  ADT has alleged that Schanz chose defendants' APT names and trademarks, [DE 70, ¶¶ 15, 93] and APT Florida has since confirmed it.  [DE 84-2 at 7, Answers 10, 11; DE 86-2 at 17, Answer 47.]  Schanz was the Manager of APT LLC when

APT LLC published the APT website.  Schanz is credited as the "Executive Producer" of APT LLC's 2011 "APT Safe" video advertisement, also published on the Internet.  Schanz is clearly the person responsible for APT LLC's infringement of ADT's trademarks.  Schanz's infringements injured ADT in Florida because ADT is located in Florida, and because APT's website and video are accessible in Florida.  Schanz's infringements confer specific jurisdiction over Schanz in this Court under *Calder*, *Licciardello* and the other cases discussed above.

Moreover, Schanz's conduct with respect to ADT's unfair trade practices claims also subjects him to jurisdiction in Florida.  Schanz traveled to Florida to create and organize APT Florida, [DE 86-2 at 14, Answer 38] which ADT has alleged was part of an unlawful scheme to create a structure to enable Schanz to violate the Lanham Act with impunity.[15]  [DE 70, ¶ 20.] APT Florida's General Manager, Richard Brimhall, identified Schanz as the person who oversees APT Florida's sales agents.  [DE 48 at 49.]  APT Florida's regional sales manager and office manager, Jacob Dahl, also identified Schanz as the person to whom he reports.  [DE 48 at 64.]  Schanz's ongoing communications into Florida with Dahl and the other sales agents located in Florida whom Schanz supervises and directs, provide an additional basis for asserting specific jurisdiction over Schanz directly here in addition to Schanz's physical presence in Florida to create and organize APT Florida.  *See, e.g., Wendt v. Horowitz*, 822 So. 2d 1252, 1259-60 (Fla. 2002) ("committing a tortious act in Florida under section 48.193(1)(b) can occur through the nonresident defendant's telephonic, electronic, or written communications into Florida").

Finally, the corporate shield doctrine does not insulate Schanz from jurisdiction.  ***The corporate shield doctrine does not apply where the defendant is alleged to have committed an intentional tort.***  *See Kitroser v. Hurt*, 85 So.3d 1084, 1088 n.3 (Fla. 2012); *Doe v. Thompson*,

---

[15]   Schanz's work in Florida to create and organize APT Florida was also an additional act of trademark infringement, since Schanz was creating and organizing another entity using the APT name and trademark to ADT's injury in Florida.

620 So. 2d 1004, 1006 n.1 (Fla. 1993); *Plasticos Vandux De Colombia S.A. v. Robanda Int'l, Inc.*, No. 10-cv-60188, 2011 WL 2721852, *4 (S.D. Fla. July 9, 2010); *Elandia Int'l, Inc. v. Ah Koy*, 690 F. Supp. 2d 1317, 1332 (S.D. Fla. 2010); *KVAR Energy*, 2009 WL 103645 at * 12; *Levi Strauss & Co.*, 778 F. Supp. at 1207.  This Court has expressly declined to apply the corporate shield doctrine to infringement claims.  *See KVAR Energy, supra; Levi Strauss & Co., supra*; *Plasticos Vandux, supra*.  ADT has alleged that Schanz knowingly infringed its trademarks [DE 70, ¶¶ 15, 93]; as already shown above, Schanz's intent may be inferred; Schanz has not rebutted these allegations and inferences.  The corporate shield doctrine cannot spare Schanz here.[16]

Schanz, a knowing infringer of ADT's trademark, is clearly subject to jurisdiction in Florida.  The Court should find jurisdiction over Schanz on this ground alone.

**B.      Schanz and APT LLC are each amenable to jurisdiction by reason of the acts of APT Florida as their agents.**

In addition, the Court may assert jurisdiction over APT LLC and Schanz through principles of agency.  The Florida long-arm statute provides for specific jurisdiction over nonresidents who commit torts in Florida through their agents in Florida.  *See* Fla. Stat. § 48.193(1); *accord, e.g., Meier,* 288 F.3d at 1272-74.  Where a resident entity "is merely an agent through which the parent company conducts business in a particular jurisdiction or its separate corporate status is formal only and without any semblance of individual identity," then the nonresidents "will be said to be doing business in the jurisdiction" through the resident entity

---

[16]   Nor, as defendants argue, [DE 76 at 7] does the doctrine apply to insulate Schanz from jurisdiction based on Schanz's actions *in Florida*.  The corporate shield doctrine plainly does *not* immunize corporate officers from their acts *in Florida* that cause injury in Florida.  "Where an individual, nonresident defendant commits negligent acts in Florida, whether on behalf of a corporate employer or not, the corporate shield doctrine does not operate as a bar to personal jurisdiction in Florida over the individual defendant."  *Kitroser,* 85 So. 3d at 1090.  "To hold otherwise would be tantamount to providing corporate employees with a form of diplomatic immunity."  *Id.*  Schanz's work in Florida to create and organize APT Florida injured ADT by establishing a competitor with a trademark that infringed ADT's mark.  The corporate shield doctrine does not apply to bar jurisdiction over Schanz for Schanz's misconduct in Florida.

"for the purposes of asserting personal jurisdiction." *Meier*, 288 F.3d at 1272, *quoting* C. Wright & A. Miller, FEDERAL PRAC. & PROC. § 1069.4 (3d ed. 2002); *accord Sculptchair, Inc v. Century Arts, Inc.*, 94 F.3d 623, 628-29 (11th Cir 1996) (agency for jurisdictional purposes will be found where agent entity is found not to exercise "meaningful control" over its business activities). This is a general rule of agency, that is not limited in application to parent and subsidiary corporations. "Personal jurisdiction over affiliated parties, whether a parent or another related subsidiary, is warranted when the resident corporation acts on behalf of those foreign affiliates." *Meier*, 288 F.3d at 1273.

The facts set forth above, unrebutted by defendants, make APT LLC and Schanz amenable to jurisdiction in Florida for the torts of their APT Florida agents in Florida. As alleged and set forth in the Introduction above, APT Florida has no salaried employees in Florida; APT Florida's non-sales functions are performed by Schanz, APT LLC and APT Management; APT Florida's sales functions are supervised and controlled by Schanz and APT LLC; APT's funds are paid into and out of bank accounts owned or controlled by APT Management; APT Florida exists only to sell goods and services on APT's behalf; APT Florida appears not to have any separate, independent existence apart from its affiliates. In *Meier*, the Eleventh Circuit found jurisdiction over Bahamian entities based on the presence of an affiliate in Florida that handled their payables and receivables, their advertising, and their acquisition of customers. *See Meier*, 288 F.3d at 1273. Moreover, in *Meier*, the Florida affiliate performed no services on behalf of other companies, but existed only to sell the services of the offshore entity, functioning "solely to achieve the purpose of the dominant corporation." *Id.* These facts are all present here as well and combine to establish an additional basis for this Court's jurisdiction over Schanz and APT LLC.

C.      **Schanz and APT LLC are each amenable to jurisdiction
        by reason of the acts of APT Florida as their alter ego.**

Finally, jurisdiction lies over APT LLC and Schanz based on ADT's allegations that

Schanz, APT Florida and APT LLC are alter egos.  [DE 70, ¶ 19.]  The facts just discussed that

support a finding of jurisdiction based on agency, also support an alter ego finding of

jurisdiction.  In addition, ADT has alleged that Schanz formed APT Florida in 2011 to enable

Shanz and APT LLC to hire a cadre of "independent contractor" sales agents in Florida whose

torts could not be attributed to Schanz or APT LLC.  [DE 70, ¶ 20.]  ADT has also alleged that

APT Florida was undercapitalized and exists as a mere shell without any separate existence.  [DE

70, ¶ 20.]  Since filing the Complaint, discovery has confirmed that APT Florida's non-sales

functions are handled by other APT affiliates.  As already noted, APT LLC appears charged with

advertising and internet marketing for APT Florida, and oversight of APT Florida's sales efforts.

APT Management provides APT Florida with bookkeeping, accounting and administrative

services; receives payments from APT Florida customers; pays APT Florida sales agents;

provides customer support for APT Florida's customers; and conducts the "Welcome Calls" for

new APT Florida customers.

These facts show that APT Florida is not an independent company, but, instead, is a

device created to insulate Adam Schanz from liability for abusive sales tactics aimed at

siphoning off ADT's Florida customers.  Ordinarily, limited liability is a fair and appropriate

benefit of the corporate form.  But in this case, grounds exist to disregard the separate entities.

First, APT Florida was created from its inception for the purpose of using an infringing

trademark in commerce to sell alarm systems in Florida, to exploit ADT's goodwill in Florida.

Second, Schanz staffed APT Florida entirely with "independent contractors" for the express

purpose of being able to disavow their misconduct when confronted by it, as APT Florida has

14

argued in this case.  [DE 13 at 2.]  And third, as shown in the Introduction, APT Florida's

discovery responses underscore ADT's allegation that APT Florida is inadequately capitalized

[DE 70, ¶ 20] – that APT Florida may lack access to capital needed to satisfy judgments against

it because its income is paid into APT Management accounts, and because APT Florida appears

to have an uncertain physical presence for creditors seeking to execute on its assets, if any.

     These allegations suffice to disregard APT Florida's corporate form and reach Schanz,

APT LLC,  and the other APT affiliates.  *See Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d

1114, 1120-21 (1984) (courts may disregard the corporate form upon a showing that it exists as a

mere instrumentality of another, *and* was created or used for an improper purpose).  They also

suffice to bring Schanz and APT LLC within the jurisdiction of the Court, based on the Court's

conceded jurisdiction over APT Florida.  As the Fifth Circuit has stated,

> "federal courts have consistently acknowledged that it is compatible with due
> process for a court to exercise personal jurisdiction over an individual or a
> corporation that would not ordinarily be subject to personal jurisdiction in that
> court when the individual or corporation is an alter ego or successor of a
> corporation that would be subject to personal jurisdiction in that court."

*Patin v. Thoroughbred Power Boats Inc*., 294 F.3d 640, 653 (5th Cir. 2002); *see id*. at 653 n.18

(collecting cases).  *Accord, e.g., Mother Doe I v. Al Maktoum*, 632 F. Supp. 2d 1130, 1140 (S.D.

Fla. 2007) ("nonresident shareholder of a corporation doing business in Florida may be subject to

long-arm jurisdiction under an alter ego theory").

     As shown above, ADT has alleged the elements required to prevail on an alter-ego theory

of jurisdiction and liability, and has offered additional facts here, acquired in discovery, to

support that theory.  Schanz and APT LLC may be found amenable to the Court's jurisdiction as

alter egos of APT Florida in addition to the other jurisdictional bases laid out in the preceding

sections.  The motion to dismiss for lack of jurisdiction under Rule 12(b)(2) should be denied.

## II.     The Complaint States Claims For Relief And For Punitive Damages.

Defendants also move to dismiss aspects of the case on their merits.  None of these

attacks justifies dismissal.

### A.     The Complaint states claims against Schanz and APT LLC.

Schanz and APT LLC first argue that the Complaint states no claim against them.  [DE

76 at 14-16.]  That argument simply ignores the Complaint's allegations and the governing cases.

**Schanz.**  The Complaint alleges that Schanz intentionally infringed ADT's trademarks by

selecting the "APT" acronym as a trademark for his companies [DE 70, ¶¶ 15, 93-96], and that

Schanz devised, directed and supervised the sales practices that injured ADT [DE 70, ¶¶ 100-04,

106, 109].  These allegations are not spun from thin air, as defendants suggest, but are based on

the evidence APT Florida's own agents offered at the preliminary injunction hearing [*e.g.*, DE 48

at 49, 64 (testimony that APT Florida agents report to Schanz)] and are corroborated by APT

Florida in discovery.  [DE 84-2 at 7, Answers 10, 11; DE 86-2 at 17, Answer 47 (Schanz selected

APT's name and designed its trademark).]  Schanz's acts of infringement make him directly

liable on ADT's infringement claim.  Schanz's orchestration of APT Florida's abusive trade

practices makes him liable for that misconduct on the Complaint's remaining counts, whether

viewed as a direct tort in its own right, or on an agency or alter-ego theory of liability for APT

Florida's wrongs.  *See, e.g., Mead Johnson*, 402 F.2d at 23; *Chanel*, 931 F.2d at 1477; *Coach*

*Services, Inc. v. 777 Lucky Accessories, Inc*., No. 09-61590-Civ., 201 WL 2266023, *4 (S.D. Fla.

June 4, 2010); *Turner-Greenburg Associates*, 320 F. Supp. 2d at 1334.

Schanz alone sits atop APT as the "moving, active, conscious force" behind the

enterprise in all its various affiliated entities, *Chanel*, 931 F.2d at 1477-78, which taken together

appear as a "confusing conglomerate" that works together as "essentially one and the same

company both financially and structurally." *Meier*, 288 F.3d at 1273, *quoting Pappalardo v. Richfield Hospitality Servs., Inc.*, 790 So. 2d 1226, 1228 (Fla. 4th DCA 2001) (finding liability among affiliated entities on agency theory). The Lanham Act requires nothing more. APT Florida's misconduct alleged in each of the Complaint's remaining counts may be attributed to Schanz himself, if not because of his direct participation in it, then through well-recognized principles of agency and alter ego liability.

     **APT LLC.**  For the same reasons, the Complaint states claims against APT LLC.  APT LLC was the first APT entity that Schanz organized, in December 2008.  APT LLC posted the www.aptsafe.com website on the Internet by November 2010, and published at least one "APT Safe" video advertisement in December 2011 – both prominently featuring the infringing APT acronym and trademark.  In addition, the Complaint alleges that APT LLC owns and licenses the APT trademarks (in substance if not by contract) to APT Florida and the other APT entities, directs and controls APT Florida's sales efforts, provides necessary materials, an Internet presence, and support for APT Florida's sales efforts; and in turn uses APT Florida as its agent for sales and marketing in Florida.  [DE 70, ¶¶ 4, 18-21, 108, 109.]  These facts suffice to establish APT LLC's direct liability as an infringer of ADT's trademarks, and its direct and derivative liability for APT Florida's abusive sales practices under APT LLC's control.

     **B.**     **The Complaint adequately pleads FDUTPA damages.**

     Next, defendants seek dismissal of the claim for damages under FDUTPA, claiming that ADT has not pled actual damages under the statute.  [DE 76 at 17-18.]  Defendants argue that FDUTPA provides for awards of "actual" damages, but that ADT pleads only "consequential damages." Defendants do not seek dismissal of the FDUTPA claim in its entirety, and do not challenge ADT's plea for injunctive relief under it.

"Actual damages" for the purposes of the FDUTPA are generally "those damages recoverable at common law."  *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984). In a *consumer's* FDUTPA claim, "actual damages" is commonly understood to mean the difference between the product as advertised, and its value as received – or, if worthless, then the purchase price.  *See id.*, 454 So. 2d at 585; *accord Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006) (following *Heller*; prefacing its discussion as applying to "a *consumer* claim for damages under FDUTPA" (emphasis added)).  Thus, for example, the consumer in *Heller* sued for a faulty burglar alarm system; the court found the consumer's actual damages to be the diminution in the value of the alarm system attributable to the defect, but not the value of items stolen from the plaintiff's home as a consequence of the defect. *Heller,* 454 So. 2d at 584-85.

This accepted definition of damages recoverable in a *consumer's* FDUTPA claim, however, is meaningless in the context of a *competitor's* claim.  The competitor has not purchased a worthless product – the competitor has lost business and profits.  A competitor's actual damages in a FDUTPA case are its "actual lost profits" suffered by reason of the unfair trade practices.  *Stockwire Research Group, Inc. v. Lebed*, 577 F. Supp. 2d 1262, 1268-69 (S.D. Fla. 2008); *accord Sun Protection Factory, Inc. v. Tender Corp*., No. 604CV732ORL19KRS, 2005 WL 2484710, *14 (M.D. Fla. 2005) ("lost business and lost profits constitute a loss" recoverable by competitor under FDUTPA).  In the context of a competitor's FDUTPA claim, lost business is the direct result of the abusive trade practice and qualifies as "actual damages" recoverable under the statute.  Trademark infringement and unfair competition claims are clearly "the type of behavior which the statute was meant to protect against," *Laboratorios Roldan, C. por A. v. Tex Int'l, Inc*., 902 F. Supp. 1555, 1569 (S.D. Fla. 1995); *accord Pepsico, Inc. v.*

*Distribuidora La Matagalpa, Inc.*, 510 F. Supp. 2d 1110, 1114 (S.D. Fla. 2007), and competitors may seek FDUTPA damages for all losses caused directly by the violation.[17]

In support of their contrary position, defendants cite only to dicta from *Tampa Suburban Utilities Corp. v. Hillsborough County Aviation Auth.*, 195 So. 2d 568 (Fla. 2d DCA 1967), which observes that lost customers are "a business loss, and as such, constitutes consequential damages." *Id.*, 195 So. 2d at 570-71.  But *Tampa Suburban Utilities* is an eminent domain case, not an unfair trade practices case.  *See id*.  In an eminent domain case, the plaintiff's direct damages would be the diminution in the assessed value of the property caused by the taking; business losses caused by the taking would be consequential to the direct loss suffered.  *See id*. Whatever the merits of that observation in an eminent domain case, it bears no relationship to the direct damages caused by a competitor's unfair trade practices in a FDUTPA case.

ADT pleaded that it has lost customers and profits as a direct result of defendants' unfair and deceptive trade practices.  [DE 70, ¶¶ 26, 29.]  That is a sufficient allegation to support ADT's FDUTPA damages claim.  Defendants' motion to dismiss the FDUTPA damages claim has no basis in the law and should be denied.

### C.  The Complaint pleads grounds for punitive damages.

Finally, defendants challenge the Complaint's punitive damages requests on the common-law claims for intentional interference and commercial disparagement, arguing that

---

[17]   The amendment notes to Fla. Stat. § 501.211(2) record that a former version of the statute had limited claims for damages to consumers.  The 2001 amendment to Section 501.211(2) removed the reference to consumers, and the decisions since have permitted competitors to seek damages under the amended statute.  *See, e.g., Sun Protection Factory, supra.*  Decisions predating the 2001 amendment hold that competitors may not seek FDUTPA damages, *see, e.g., Big Tomato v. Tasty Concepts, Inc.*, 972 F. Supp. 662, 663-64 (S.D. Fla. 1997), but these cases are no longer valid statements of a competitor's right to recover damages under the FDUTPA as amended in 2001.

Florida law requires an allegation of knowing and active participation in intentional misconduct. [DE 76 at 18-19.] Defendants do not challenge the sufficiency of the two claims on their merits.

In fact, ADT *has* made such allegations in its Complaint. The Complaint details at length the intentional misconduct of Dahl and APT Florida. [*E.g.,* DE 70, ¶¶ 24-86.] As for APT LLC and Schanz, the complaint alleges, for example, that "APT LLC and Schanz, by monitoring, directing and controlling the actions of APT Florida, Dahl, and ADT's other sales agents, have at all times been in active concert with APT Florida and Dahl in their common efforts to confuse the market by the deployment of an infringing trademark and by the use of deceptive trade practices that are intended to mislead customers." [DE 70, ¶ 21.] Moreover, defendants do not dispute that ADT adequately alleges the disparagement and intentional interference claims. Both by definition are intentional torts for which punitive damages lie. Because ADT has already pled that APT LLC and Schanz were actively and knowingly involved in APT Florida's misconduct, and because the common-law counts of the complaint are by definition intentional torts, the pleas for punitive damages lie against all defendants. They should not be dismissed.

## CONCLUSION

The motion should be denied.

Dated:  January 21, 2013                       Respectfully submitted,

s/ C. Sanders McNew

_____

C. Sanders McNew
mcnew@mcnew.net
Florida Bar No. 0090561
McNEW P.A.
2385 NW Executive Center Drive, Suite 100
Boca Raton, Florida  33431
Tel:  (561) 299-0257
Fax: (561) 299-3705

*Counsel for the Plaintiff, ADT LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on this 21st day of January, 2013, I caused a true and correct copy of the foregoing Motion, its exhibits, and a proposed order to be served by CM/ECF on counsel for all parties listed to receive electronic service for this case, as listed below:

<u>CM/ECF Participants</u>
Michael Marcil, Esq.
K. Stuart Goldberg, Esq.
J. Ryan Mitchell, Esq.
Russell A. Nevers, Esq.

/s C. Sanders McNew
_____
C. Sanders McNew