UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-80898-CIV-RYSKAMP/HOPKINS

ADT LLC,

      Plaintiff,

v.

ALARM PROTECTION TECHNOLOGY
FLORIDA, LLC, JACOB DAHL, ADAM
D. SCHANZ, and ALARM PROTECTION
TECHNOLOGY, LLC, et al.,

      Defendants.

_____/

## DEFENDANTS' VERIFIED MOTION FOR ATTORNEY'S FEES

Defendants Alarm Protection Technology, LLC, Alarm Protection Technology Florida, LLC, Alarm Protection Technology Holdings, LLC, Alarm Protection Technology Management, LLC, Jacob Dahl and Adam Schanz (collectively "Defendants"), by their undersigned counsel and pursuant to 15 U.S.C. § 1117(a), Fla. Stat. § 501.2105, and S.D. Fla. L.R. 7.3, file their Motion for Attorney's Fees, and, in support thereof, include the information required by S.D. Fla. L.R. 7.3(a), supporting Declarations, and Memorandum of Law:

## INTRODUCTION

On February 25, 2015, the Court entered Final Judgment in favor of Defendants on all counts. (DE 520). The Final Judgment followed a jury trial on February 17-20 and 23-24, 2015 that returned a verdict for Defendants on Count I and II (Lanham Act), and precluded any recovery for Plaintiff, ADT LLC ("ADT") on Count III (Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")).[1]

---

[1] ADT voluntarily dismissed Counts IV and V in January 2014.  (DE 220 at 1).

As prevailing parties, Defendants are entitled to **$980,564.00** in attorney's fees pursuant to the Lanham Act, 15 U.S.C. § 1117(a), because this was an exceptional case.   Alternatively, Defendants are entitled to that amount pursuant to FDUTPA, Fla. Stat. § 501.2105.

Prior to the filing of this motion, the parties conferred pursuant to S.D. Fla. L.R. 7.3(b), and reached substantial agreement.   ADT has no objection to the amounts demanded or the documentation that support it.   ADT has not particularized in writing an objection to entitlement, with the sole exception being that ADT, citing Fla. Stat. § 501.2105, asserts that that the motion for attorney's fees may not be filed until after ADT's appeals are exhausted.

While ADT is correct that FDUTPA prevailing parties may only receive their reasonable attorney's fees after "exhaustion of all appeals," Fla. Stat. 501.2105(1), there is no similar restriction under the Lanham Act, 15 U.S.C. § 1117(a).   Because Counts I-II (Lanham Act) were inextricably intertwined with Count III (FDUTPA), the Court need not await the "exhaustion of all appeals" to award Defendants all claimed fees under the Lanham Act.   Because all counts were inextricably intertwined, Defendants are entitled to their fees for the entire case, pursuant to the Lanham Act.[2]

## S.D. FLA. LOCAL RULE 7.3(a) INFORMATION

The following is the information required by S.D. Fla. L.R. 7.3(a):

(1)      The motion is being filed before the April 24, 2015, deadline, which is sixty (60) days from the date of the February 25, 2015, Final Judgment.

(2)      The judgment that gives rise to this motion is the February 25, 2015, Final Judgment (DE 520), and the statutes entitling Defendants to the award are 15 U.S.C. § 1117(a) and Fla. Stat. §

---

[2] Should this Court find entitlement *only* under FDUTPA, this Court may stay its consideration of the motion until the exhaustion of all appeals.   Defendants, however, were required to file the motion "within sixty (60) days of the entry of the final judgment. . . regardless of the prospect or pendency of supplemental review or appellate proceedings."  S.D. Fla. L.R. 7.3(a)(1).

501.2105. Defendants requested attorney's fees in the pleadings. (DE 161 at 16; see also DE 12 at 41; DE 41 at 16; DE 73).

(3)     Defendants seek herein attorney's fees in the amount of **$980,564.00**.

(4)     The Gunster law firm entered a fee agreement with Alarm Protection Technology Florida, LLC, Alarm Protection Technology, LLC and Jacob Dahl on December 12, 2012. (Exhibit 1).  After the amendment of the complaint by ADT to add additional parties, Gunster entered a second fee agreement with Alarm Protection Technology Florida, LLC, Alarm Protection Technology, LLC, Alarm Protection Technology Holdings, LLC, Alarm Protection Technology Management, LLC, Jacob Dahl and Adam Schanz on April 25, 2013.  (Exhibit 2). Defendants agreed to compensate Gunster by paying a reasonable fee for services rendered based upon an hourly fee arrangement.  The fee agreements set the hourly rates of $495.00 per hour for Michael Marcil, $340.00 per hour for Jennifer Nicole, and $340.00 for an associate attorney.

(5) Attorney Information:

(A)     The timekeepers include *Michael Marcil* (lead attorney), *Jennifer Nicole* (attorney), *Elizabeth Gaukroger* (attorney), *Heather Costanzo* (attorney), *Frederick Owens Jr.* (litigation support coordinator) and *Gina Wilkerson* (paralegal).

- *Michael Marcil* is a graduate of Georgetown University Law Center, a Member of the Florida Bar (1996), Maryland Bar (1994), and the United States District Courts for Maryland (1995), the Southern District of Florida (1997), the Middle District of Florida (1998) and the Northern District of Florida (1999).  Mr. Marcil has practiced law for 20 years, and has first-chaired jury trials in state and federal courts, including intellectual property cases.  He has worked at Gunster since 1996, where he is a shareholder and co-chairs the Business Litigation Practice.  (Exhibit 3, Biography).

- *Jennifer Nicole* is a 1997 graduate of the University of Virginia School of Law. She is a Member of the Florida Bar (1997), and the United States District Courts for the Southern District of Florida (1999), the Middle District of Florida (2000), and the Northern District of Florida (2000). Ms. Nicole has tried cases in state and federal courts, including on intellectual property matters. Ms. Nicole has worked at Gunster since 1998, and is a shareholder. (Exhibit 4, Biography).

- *Elizabeth Gaukroger* is a 2005 graduate of The George Washington Law School. Ms. Gaukroger served as Law Clerk to the Honorable William Dimitrouleas from September 2005 to September 2007. Ms. Gaukroger worked at Gunster from 2011 to April 2013 as an associate attorney. (Exhibit 5, Biography).

- *Heather Costanzo* is a 2007 graduate of The George Washington Law School. She served as Law Clerk to the Honorable William Dimitrouleas from September 2007 through September 2009. Ms. Costanzo is a Member of the Florida Bar (2007), and the United States District Courts for the Southern District of Florida (2011), the Middle District of Florida (2011), and the Northern District of Florida (2012). Ms. Costanzo has worked at Gunster since October 2009 as an associate attorney. (Exhibit 6, Biography).

- *Frederick Owens Jr.* is a 2004 graduate of the Nova Southeastern University Law School. Mr. Owens has worked at Gunster since 2011 in the position of electronic discovery and litigation support coordinator. Mr. Owens has 10 years of experience in providing litigation support at trial, including electronic evidence presentation, creation of demonstrative aids and deployment of courtroom technology. (Exhibit 7, Biography).

- *Gina Wilkerson* has an Associate's Degree in Pre-Law from Broward College (2001) and a Bachelor's Degree in Criminal Justice from Florida Atlantic University (2010). She has worked at Gunster since January 2003.  Ms. Wilkerson has taken course work and has been trained as a paralegal.

(B)     The number of hours reasonably expended by each timekeeper in this matter is as follows:   *Michael Marcil* (837.4 hours), *Jennifer Nicole* (1302.3 hours), *Elizabeth Gaukroger* (73.8 hours), *Heather Costanzo* (84.2 hours), *Frederick Owens Jr.* (215.10 hours) and *Gina Wilkerson* (193.7 hours).

(C) The tasks performed by each timekeeper are as follows:

- *Michael Marcil*:  Mr. Marcil (i) first-chaired the trial, (ii) argued the hearings on cross-motions for summary judgment, the motion for preliminary injunction, certain discovery motions, and the motions in limine, (iii) took and defended 11 depositions, (iv) drafted select papers, (vi) prepared witnesses for testimony at trial, and (vii) prepared all witness examinations, the opening statement and closing argument for trial.

- *Jennifer Nicole*: Ms. Nicole (i) drafted and responded to motions for summary judgment, discovery motions, motions in limine, and other motions, (ii) second-chaired the trial, including arguing jury instructions at the charge conference and motions for judgment as a matter of law; (iii) prepared the Joint Pretrial Stipulation, (iv) drafted and responded to jury instructions, (v) designated portions of depositions for use at trial, (vi) took or defended 4 depositions, (vii) coordinated production and discovery responses, and (viii) argued discovery motions at hearings.

- *Elizabeth Gaukroger*:   Ms. Gaukroger worked on this case between January and March 2013.  Ms. Gaukroger drafted preliminary injunction and discovery papers.

- *Heather Costanzo*: Ms. Costanzo worked on this case during the seven-day trial in February 2015, providing drafting, research and trial support.

- *Frederick Owens Jr.*: Mr. Owens provided trial support in the month leading up to, and including trial (November 2014 through February 2015). Mr. Owens created electronic evidence presentations and demonstrative aids, and deployed courtroom technology.

- *Gina Wilkerson*:  Ms. Wilkerson provided trial support in the three weeks leading up to trial, including organization and preparation of trial exhibits, deposition designations, and demonstrative summaries for use at trial.

(D)     The hourly rate claimed for each timekeeper is as follows: *Michael Marcil* (<u>$495.00</u>), *Jennifer Nicole* (<u>$340.00</u>), *Elizabeth Gaukroger* (<u>$340.00</u>), *Heather Costanzo* (<u>$310.00</u>), *Frederick Owens Jr.* (<u>$200.00</u>) and *Gina Wilkerson* (<u>$150.00</u>).

(6)     Invoices for all claimed fees are set forth at Exhibit 8, and include monthly invoices from January 2013 through March 2015.

(7)     This motion is verified below by Michael Marcil.  Pursuant to Fla. Stat. 501.2105(2), a Declaration of Michael Marcil also is attached as Exhibit 9.

(8)     A draft of this motion was served on ADT on March 16, 2014, which is at least 30 days in advance of the motion for attorney's fees deadline of April 24, 2015, in a good faith effort to resolve issues by agreement.  (Exhibit 10, 3/23/15 Letter of Michael Marcil).   During the conferral period, the parties reached substantial agreement.   Specifically, ADT asserted no objection to the amount of attorney's fees demanded, or the supporting documentation. (Exhibit

11, 3/23/15 email of C. Sanders McNew).  ADT's only objection concerned whether the motion

could be filed prior to the exhaustion of appeals.  (Exhibit 11).

## MEMORANDUM OF LAW

**I.  AS THE PREVAILING PARTY, DEFENDANTS ARE ENTITLED TO REASONABLE ATTORNEY'S FEES UNDER THE LANHAM ACT, OR, IN THE ALTERNATIVE, UNDER FDUTPA.**

### A.  Attorney's Fees Should be Awarded Pursuant to the Lanham Act, 15 U.S.C. § 1117.

#### 1.  Fees Should be Awarded Because This Was an Exceptional Case.

Title 15 U.S.C. § 1117(a)(3) provides that a court "in exceptional cases may award

reasonable attorney fees to the prevailing party."  The Supreme Court recently defined the term

"exceptional case," as

> simply one that stands out from others with respect to the substantive strength of a
> party's litigating position (considering both the governing law and the facts of the
> case) or the unreasonable manner in which the case was litigated. District courts
> may determine whether a case is "exceptional" in the case-by-case exercise of
> their discretion, considering the totality of the circumstances.

*Octane Fitness LLC v. ICON Health & Fitness, Inc.*, 134 S.Ct 1749, 1756 (2014).[3]  There is no

need to prove misconduct, bad faith or baseless litigation – much less by clear and convincing

evidence -- because the statutory language "demands a simple discretionary inquiry; it imposes

no specific evidentiary burden, much less such a high one." *Id.* at 1758.  This was an exceptional

case, and the Court should exercise its discretion to award attorney's fees under the Lanham Act.

First, the substantive strength of the parties' litigating position favors an award of fees.

ADT ploughed towards trial with *no* evidence that *any* ADT customer ever confused the "APT"

---

[3] Although *Octane Fitness* was decided under the Patent Act, 35 USC § 285, courts apply the
same rationale to the Lanham Act because it contains the same "exceptional case" language. *See
Fair Wind Sailing, Inc. v. Dempster*, 764 F. 3d 303, 311 (3rd Cir. 2014); *High Tech Pet Products,
Inc. v. Shenzhen Jianfend Elec. Pet Product Co., Ltd.*, 2015 WL 926023 (M.D. Fla. 2015).

mark with the "ADT" mark, and with a survey that predicted only 18% confusion.[4]   ADT ignored evidence that their customers (a) actually received upgrades from their landlines to cellular, debunking ADT's theory that a company cannot upgrade a prospective customer's outdated technology from its competitor,[5] and (b) signed disclaimers (and participated in audio-recorded calls), acknowledging that APT and ADT were different companies.[6]  ADT requested *$27 million in damages* by unreasonably seeking a *ten-year* revenue stream on *five-year* APT contracts and entirely disregarding Alarm Protection's costs.  The jury heard this evidence and returned a defense verdict in two hours.

Second, ADT litigated this case in an unreasonable manner.  Instead of being satisfied with the name change from Alarm Protection Technology to Alarm Protection in March 2013, ADT prosecuted this case for two more years, with three requested continuances of trial,[7] re-argument of motions,[8] and an appearance on ABC's *20/20* new magazine to disparage Defendants immediately prior to trial.

Considering the totality of the circumstances, this was no ordinary litigation.  The case spanned 30 months, involved three trial continuances, and included 500 court docket entries. While ADT may have vast resources to fund such sprawling litigation, smaller companies and individuals like Defendants should not be forced to pay for their own fees in these circumstances.

---

[4] See DE 196-2 at 8.  Less than 20% confusion is considered "problematic" in *McCarthy on Trademark and Unfair Competition*, § 32:188.
[5] ADT alleged that Defendants *falsely* represented to ADT customers that their security systems were "outdated" or "in need of upgrades." DE 151, ¶ 48.  Pretrial discovery in Summer 2013 (DE 221-11, 221-12, 221-13, 221-14, 221-15, and 221-16), however, revealed that the customers *did* have outdated landlines, and welcomed upgrades.
[6] These items were used at the customer depositions in August and September 2013 (DE 221-11, 221-12, 221-13, 221-14, 221-15, and 221-16).
[7] See DE 280, 282, 284, DE 339, DE 340, DE 405 and DE 407.
[8] See  DE 251 at 12, DE 376, DE 411, DE 412, DE 469, DE 476, DE 479, DE 529 at 3-4.

Otherwise, large companies like ADT can "win by losing," by forcing their fledgling competitors to spend hundreds of thousands of dollars to defend themselves *successfully*.

During the S.D. Fla. L.R. 7.3(b) conferral period, ADT did not object to entitlement by contesting the exceptional nature of this case. S.D. Fla. L.R. 7.3 required ADT, within 21 days of receiving the draft motion, to "describe in writing and with reasonable particularity" its objections "both as to issues of entitlement and as to amount," and to "provide supporting legal authority." ADT did not object to Defendants' claim that this was an exceptional case, and did not provide any legal authority to suggest it was not exceptional.

Therefore, this Court should exercise its equitable discretion under 15 U.S.C. § 1117(a)(3) to award attorney's fees to the Defendants as the prevailing party.

**2.   Fees Should be Awarded Pursuant to the Lanham Act for the Entire Case.**

Where the underlying conduct is the same for the Lanham Act and other claims, a court will allow fees for all claims that are "inextricably intertwined" with the Lanham Act. *See Costa v. Datapro*, 2012 WL 591307, *5 (S.D. Fla. 2012) (awarding Datapro fees for all work expended on counterclaims for tortious interference, breach of contract and breach of fiduciary duty, which were based on the same conduct as the Lanham Act claim); *Aamco Transmissions, Inc. v. Graham*, 1990 WL 118050 (E.D. Pa. 1990) (awarding prevailing party its attorney's fees relating to contract claims, which had no fee shifting provision, because the claims are "intermingled" with the Lanham Act claims, and "the factual bases of all these claims are the same, as are the legal theories supporting them.").

Here, the attorney's fees award under the Lanham Act should extend to all counts because ADT's unsuccessful Lanham Act claims (Counts II and III) were inextricably intertwined with ADT's other unsuccessful claims (Count III, IV and V). The same set of facts

gave rise to the Lanham Act and FDUTPA counts, and the same proof was used to prove the Lanham Act and FDUTPA claims.[9]   Indeed, ADT repeatedly took this very position during the litigation:

- "If the Lanham Act violation is established, then the FDUTPA claim is established as well." (DE 312, Hearing Transcript, at 2:14 thru 3:14).

- "Trademark infringements and claims of false affiliation made in violation of the Lanham Act also create liability under the Florida Deceptive and Unfair Trade Practices Act.  A successful infringement claim supports a claim for violation of FDUTPA." (DE 219, Motion for Partial Summary Judgment, at 21; citations omitted).

Therefore, reasonable attorney's fees for all counts should be awarded under the Lanham Act.

## B. In the Alternative, Attorney's Fees Should Be Awarded Pursuant to FDUTPA.

### 1. Fees Alternatively are Awardable Under FDUTPA.

Florida Statute § 501.2105(1) provides that a prevailing party "may receive his or her reasonable attorney's fees and costs from the nonprevailing party."  The statute applies equally to prevailing plaintiffs and to prevailing defendants.  *Diamond Aircraft Industries, Inc. v. Horowitch*, 107 So. 3d 362 (Fla. 2013) ("By invoking FDUTPA and seeking redress under its remedial provisions, [plaintiff] exposed himself to both the benefits and the possible consequences of the act's provisions."); *Humane Society of Broward County, Inc. v. Florida Humane Society*, 951 So. 2d 966 (Fla. 4th DCA 2007) (awarding defendant attorney's fees under FDUTPA in suit to enjoin the use of the mark, "Humane Society").

"In exercising its discretion, factors that a trial court might consider [under § 501.2105] include, but are not limited to:  (1) the scope and history of the litigation; (2) the ability of the

---

[9] Similarly, although Counts IV and V remained in the case until January 2014, the claims involved the same common core of facts, and ADT admitted to dismissing those claims because those "common law claims for commercial disparagement and intentional interference with contractual relations" requested relief that "would be duplicative of an award of defendants' profits under Section 35(a) of the Lanham Act." (DE 220 at 1).

opposing party to satisfy an award of fees; (3) whether an award of fees against the opposing party would deter others from acting in similar circumstances; (4) the merits of the respective positions-including the degree of the opposing party's culpability or bad faith; (5) whether the claim brought was not in subjective bad faith but frivolous, unreasonable, groundless; (6) whether the defense raised a defense mainly to frustrate or stall; and (7) whether the claim brought was to resolve a significant legal question under FDUTPA law." *Humane Society*, 851 So. 2d at 972.   While factors (5) and (7) are neutral and factor (6) is inapplicable, factors (1), (2), (3), (4) weigh decidedly in favor of an award of fees.

First, the scope and history of the litigation was prolonged.   This case lasted 30 months, with ADT repeatedly seeking continuances of trial, which pushed the March 2014 trial date to February 2015.   The case, in fact, could have ended in March 2013, when the company name changed, but litigation persisted for two more years because ADT sought $27 million in damages.   As noted, ADT also re-argued matters previously decided, and forced Defendants to expend unnecessary fees by refusing to agree to relief requested in pre-motion conferrals, and then opting not to oppose motions.[10]

Second, ADT has the ability to satisfy an award of fees.   ADT recently reported that ADT generated revenue of $887 million and cash flow of $369 million in just the first fiscal quarter of 2015. (See http://investors.adt.com).

Third, an award of fees would deter others from acting in similar circumstances.   On January 22, 2015 (less than one month prior to trial), ADT filed a copycat lawsuit, *ADT LLC v. Alarm Protection*, Case No. 9:15-80073-RLR (SD Fla.) (Ryskamp, J.) (*ADT II*), alleging the same claims for false affiliation under the Lanham Act and FDUTPA.   Also, on the <u>day after</u>

---

[10] See DE 333, DE 335, DE 352, DE 357 and DE 372.

ADT filed *ADT II*, the second largest residential alarm security company in the industry filed a copycat Lanham Act case against Defendants, *Monitronics Int'l, Inc. v. Alarm Protection*, Case No. 3:15-cv-00235-K (N.D. Tex.) (*Monitronics*), which relied heavily on the record and testimony submitted by ADT in the instant case (*ADT I*). The virtually simultaneous timing of the filing of the *ADT II* and *Monitronics* lawsuits on the eve of the *ADT I* trial and the admitted sharing of information between ADT and Monitronics[11] establish that the two largest companies in the industry are working in concert to make their start-up competitor spend money to defend the same unfair competition allegations in multiple actions and venues. An award of fees would deter efforts to re-litigate issues.

Fourth, the merits of the parties' respective positions, including the degree of ADT's bad faith, favor an award of fees. With respect to the merits of the parties' respective positions, ADT persisted with this lawsuit despite the fact that discovery revealed that customers *were upgraded* by Alarm Protection, no person was actually confused by the "APT" and "ADT" marks, there was (at best) only an 18% likelihood of confusion shown in ADT's customer surveys, and customers acknowledged orally and in writing that APT and ADT were different companies. With respect to bad faith, ADT used extra-judicial avenues to try to obtain a litigation advantage. Specifically, a slanted exposé, with ADT accusing Defendants of deceptive sales practices, appeared on ABC's *20/20* when the trial was scheduled to occur in December 2014.[12] The episode included (1) a previously undisclosed and edited video purporting to be Defendants' training session, and (2) a video that ADT had earlier withdrawn from its exhibit list when the

---

[11] Monitronics' counsel testified that ADT has shared evidence with Monitronics relating to Alarm Protection. (*Monitronics*, DE 27-53, Affidavit of Marc Culp, ¶ 8). Another Monitronics attorney, Scott Atherton, observed the *ADT I* trial.
[12] Although the Court continued the case *sua sponte* from December 2014 to January 2015 (DE 386), ABC's *20/20* program still aired as scheduled in December 2014.

Court compelled testimony by ADT about whether ADT paid for the video. (DE 325).[13]  Instead of confining its focus to this court proceeding, with the attendant procedural and evidentiary safeguards, ADT engaged in a shadow campaign to discredit the Defendants on the eve of trial.

### 2.  In the Alternative, Fees Should Be Awarded Pursuant to FDUTPA.

FDUTPA "contemplates recovery of attorney's fees for hours devoted to the entire litigation and does not require allocation of attorney time between the Chapter 501 count and other alternative counts based on the same consumer transaction unless the attorney's fees services clearly were not related in any way to establishing or defending an alleged violation of Chapter 501." *Smith v. Bilgin*, 534 So. 2d 852 (Fla. 5th DCA 1988) (awarding attorney's fees without allocation for FDUTPA, fraud, breach of contract and breach of warranty claims); *Mandel v. Decorator's Mart, Inc. of Deerfield Beach*, 965 So. 2d 311, 314-15 (Fla. 4th DCA 2007) (awarding fees to defendants who defended a FDUTPA claim that relied on the "same common core of facts" as a breach of contract claim); *Covington v. Arizona Beverage Co., LLC*, 2011 WL 11796786 (S.D. Fla. 2011) (awarding attorney's fees where FDUTPA claim was "inextricably intertwined" with breach of warranty claim).[14]

If the Court does not award fees under the Lanham Act, the attorney's fees award under FDUTPA nevertheless should extend to all three counts because ADT's claims were inextricably intertwined.  The Court ruled in the Final Judgment that "the jury's verdict on Counts I and II precludes any recover for Plaintiff on Count III."  Also, ADT advised the Court at the Pretrial

---

[13] Although ADT claimed ignorance to the Court about whether ADT paid for the video (DE 334 at 3-7), and withdrew the video from its exhibit list rather than have ADT testify about payment for the video (DE 334 at 17; DE 347), ABC News later uncovered that ADT paid $2,500 for video.  See  http://abcnews.go.com/US/hidden-camera-investigation-door-door-hard-sell-deceit (cited at DE 506 at 15).

[14] Federal courts "are 'bound' to follow an intermediate state appellate court unless there is persuasive evidence that the highest state court would rule otherwise." *Bravo v. United States*, 577 F.3d 1324, 1326 (11th Cir. 2009).

Conference that ADT brought Count III because FDUTPA "provides a sure path to an award of attorney's fees." (DE 529, Pretrial Conference Transcript at 8:21-9:18).

### 3. The Request for Attorney's Fees Under FDUTPA is Timely.

S.D. Fla. L.R. 7.3(a)(1) requires a motion for attorney's fees to "be filed within sixty (60) days of the final judgment or order giving rise to the claim, regardless of the prospect or pendency of supplemental review or appellate proceedings." This motion complies with this rule. Fla. Stat. § 501.2105(1) is not inapposite. Although the statute provides that the prevailing party may only "receive" attorney's fees after "exhaustion of all appeals," the statute does not prohibit the motion from being _filed_. If the Court declines to award fees under the Lanham Act, the Court may stay consideration of an award under FDUTPA until the exhaustion of all appeals.

## II.   DEFENDANTS SHOULD BE AWARDED REASONABLE ATTORNEY'S FEES FOR THE TIME SPENT ON THE CASE.

"The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate. This 'lodestar' may then be adjusted for the results obtained." _Loranger v. Stierheim_, 10 F.3 d 776, 781 (11th Cir. 1994).

### A. The Hourly Rates are Reasonable.

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation." _Id._ In determining the prevailing market rate, the Court should consider several factors including "the attorney's customary fee, the skill required to perform legal services, the attorney's experience, reputation and ability, the time constraints involved, preclusion of other employment, contingency, the undesirability of the case, the attorney's relationship with the client and awards in similar cases." _Mallory v. Harkness_, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996).

ADT does not object to the hourly rates. (Ex. 11). Indeed, awards in other cases in this Court show that the hourly rates of $495.00 for lead attorneys and $340.00 per hour for second-chair attorney are within a reasonable range for attorneys practicing sophisticated litigation, including trademark litigation. *See, e.g. Suzuki Motor Corp. v. Jujiang Hison Motor Boat Mfg. Co., Ltd.*, 2013 WL 4516042 (S.D. Fla. 2013) (awarding fees of $495.00, $450.00 and $425.00 per hour for attorneys in Lanham Act matter alleging trademark infringement); *Procaps S.A. v. Patheon, Inc.*, 2013 WL 6238647, *13 (S.D. Fla. 2013) (awarding rates of lead attorneys in range of $515 to $565 per hour); *MKT Reps S.A. De C.V. v. Standard Chartered Bank Int'l (Americas) Ltd.*, 2013 WL 1289261 (S.D. Fla. 2013) (allowing rates $500.00 for the lead attorney and $350.00 per hour for second-chair attorney). Moreover, in intellectual property cases such as this one, courts have, in awarding attorneys' fees in trademark infringement actions, relied on the Economic Survey of the American Intellectual Property Law Association ("AIPLA"). *See, e.g., Mathis v. Spears*, 857 F.2d 749, 755-56 (Fed Cir. 1988) (affirming finding that "concluded that the rates generally correspond to those presented in the APLA/AIPLA surveys and were reasonable in view of those surveys"); *Int'l Intellectual Mgmt. Corp. v. Lee Yunn Enters., Inc.*, 2009 WL 9137315 (C.D. Cal. 2009); *Polo Fashions v. Extra Special Prods.*, 1980 U.S. Dist. LEXIS 16290, **16 -17 (S.D.N.Y. 1980). The 2013 AIPLA Report surveyed over 1,799 members and reported on the individual billing rates and typical charges for representative intellectual property law services. The rates charged by Mr. Marcil and Ms. Nicole fall squarely within the 2013 AILPA Report's range of $360.00 to $583.00 charged by lawyers with 15 to 24 years' experience, and the $455.00 to $588.00 range charge for attorneys between ages 40 and 49. (Ex. 12 at I-34).

The skill required to perform legal services was high given that this was a week-long jury trial on complex intellectual property claims.  The matter included 15 depositions, specialized expert testimony relating to survey evidence, cross-motions for summary judgment, 24 pretrial motions (not including discovery motions) and substantial damages claims in the amount of $27 million.  Defense counsel successfully obtained a defense verdict and judgment on all counts, which will allow Defendants the opportunity to continue to fund their business and to make a living going forward.

**B.  The Number of Hours are Reasonable.**

Motions for attorney's fees, as done here, "must provide contemporaneous and accurate records of time spent on the case," identifying "the subject matter of the attorney's time expenditures." *Costa v*, 2012 WL 591307 at *4.  While fee opponents are entitled to object to the reasonableness of the hours expended, such objections must be specific and reasonably precise. *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988).

Here, ADT states that it "has no objection to the amounts demanded, or the documentation that supports it." (Ex. 11).  Attached at Exhibit 8 are contemporaneous and accurate invoices from the Gunster law firm, reflecting time spent on the case by each timekeeper, and a description of the subject matter of each timekeeper's time expenditures.  To be conservative, Defendants made the following voluntary deductions in this fee application from the total fees that were billed to the Defendants:

- Defendants are not submitting any time records for attorney's fees incurred by Defendants' prior law firms that earlier entered an appearance in the matter.

- Defendants have not submitted any time records for Gunster's co-counsel in Utah, Mitchel & Barlow, P.C., which played a supportive role prior to Gunster's involvement.

- Defendants have voluntarily removed entries for various paralegals who contributed only occasional assistance prior to November 2014.

- No associate attorney time is claimed for the 21-month period from April 2013 through December 2014.

- Gunster eliminated strategy conferences with clients, internal strategy conferences, any time related to an interlocutory appeal, and time related to motions that were researched and/or prepared but not filed.

The voluntary deductions in the Gunster bills total over 500 hours.[15]  To avoid redundancy, Mr. Marcil primarily handled hearings, depositions and the examinations at trial, while Ms. Nicole handled primarily drafting and written discovery.  Ms. Gaukroger (3 months) and Ms. Costanzo (1 month) assisted with research and drafting for a very limited time during the peak periods of the litigation (the preliminary injunction and trial stages).[16]  And, Mr. Owens and Ms. Wilkerson only assisted immediately prior to trial.[17]  Below are the total hours billed, hourly rates and total fees requested by timekeeper:

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| *Michael Marcil* | 837.4 | $495.00 | $414,513.00 |
| *Jennifer Nicole* | 1302.3 | $340.00 | $442,782.00 |
| *Elizabeth Gaukroger* | 73.8 | $340.00 | $25,092.00 |
| *Heather Costanzo* | 84.2 | $310.00 | $26,102.00 |
| *Frederick Owens Jr.* | 215.10 | $200.00 | $43,020.00 |
| *Gina Wilkerson* | 193.7 | $150.00 | $29,055.00 |
| **Total** | 2566.30 | | **$980,564.00** |

This amount is 33% below the typical cost of high dollar trademark litigation set forth in the 2013 AIPLA Report.  The 2013 AIPLA Reports reports that, for trademark infringement suits with more than $25 million at risk (ADT here requested $27 million), the typical total cost of litigation is $1.5 million.  (Exhibit 12 at 35).[18]

---

[15] Accordingly, these entries have been redacted from the Gunster invoices at Exhibit 8.
[16] Both sides were represented by three attorneys at trial.
[17] Ms. Wilkerson did not appear at trial.  Each side had 1 trial support professional present.
[18] As a comparison, ADT incurred $793,500.00 in attorney's fees as of November 19, 2014, which exceeded Defendants' fees as of the same time period by $160,832.00.  (DE 378 at 34-35).

## CONCLUSION

For the foregoing reasons, Defendants request attorney's fees in the amount of $980,564.00 under the Lanham Act, and, alternatively, under FDUTPA.

## VERIFICATION

I HEREBY DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

Executed this __8th__ day of  April 2015.

By: _____

Michael W. Marcil

18

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 8th day of April 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to: C. Sanders McNew, Esq., 2385 NW Executive Center Drive, Suite 100, Boca Raton, FL 33431 mcnew@mcnew.net; Sherry S. Hamilton, Esq, 830 Bush Street, Spt. 205, San Francisco, CA 94108 shamilton@mcnew.net; Carlos M. Sires, Esq., Boies, Schiller & Flexner, LLP, 401 East Las Olas Boulevard, Suite 1200, Ft. Lauderdale, FL 33301 csires@bsfllp.com.

GUNSTER, YOAKLEY & STEWART, P.A.
*Attorneys for Defendants*
450 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, FL  33301
Telephone:     954-462-2000
Facsimile:     954-523-1722

By:/s/ Jennifer Nicole_____
        Michael W. Marcil, Esq.
        Florida Bar No.: 091723
        mmarcil@gunster.com
        Jennifer Nicole, Esq.
        Florida Bar No.: 00114758
        jnicole@gunster.com